**In re the MARRIAGE OF Margaret Elaine SEANOR, f/k/a Margaret E. Nimmo, Appellee,**

**and**

**Nick Nimmo, Appellant.**

**No. 92CA1785.**

Colorado Court of Appeals, Div. IV.

Nov. 18, 1993.

As Modified on Denial of Rehearing Feb. 3, 1994.

Certiorari Granted June 20, 1994.

The Connell Law Firm, Raymond J. Connell, Denver, for appellee.

The Law Office of Stephen J. Harhai, Stephen J. Harhai, Denver, for appellant.

Opinion by Judge VAN CISE *.

In this post-dissolution of marriage action, Nick Nimmo (husband) appeals orders of the trial court concerning custody, discovery, and child support. We affirm.

A decree of dissolution was entered May 4, 1989. In that decree, the trial court approved the parties' separation agreement and incorporated it in the decree. The agreement provided that: (1) Margaret E. Nimmo (now Margaret Elaine Seanor) (wife) would have the primary physical custody and husband would have sole legal custody of the parties' two children; (2) wife "shall make the day-to-day decisions concerning the children, except when the children are with husband, during which times husband shall make said decisions for the children"; and (3) as to medical care, "the parties contemplate[d] that the children shall continue to see their current pediatrician and dentist in Conifer." The decree also provided that husband would pay maintenance to wife until June 1991 and that, thereafter, he would pay child support in accordance with § 14–10–115, C.R.S. (1987 Repl.Vol. 6B). No amount was specified.

In September 1989, wife filed a motion to modify and for clarification, asking the court to change the visitation and custody arrangements (which she asserted were impractical, confusing, and detrimental to the parties and to the children) and to change the health insurance provisions. Subsequently, she filed a motion to move the children out of state.

After a hearing on both motions in October 1990, the court determined that it was in the best interests of the children that the "hybrid" custodial relationship agreed to by the parties continue. The husband's status as sole legal custodian was reaffirmed, and the insurance provisions were not changed. The

* Sitting by assignment of the Chief Justice under provisions of the Colo.Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

motion to remove the children from the state was denied.

In October 1991, wife filed a motion to increase husband's child support payments from the $839 per month he was then paying. In preparation for the hearing on the motion, and in order to discover evidence relative to wife's income as defined in § 14–10–115, husband made a discovery request in November 1991, seeking information from wife as to her gifts from her current husband and copies of her checking and credit card records. She declined to provide the information. Husband's motion to compel discovery was denied, on the grounds that the income of wife's current husband and his contribution was immaterial to the question of the amount of child support to be paid by husband and that this would constitute an invasion of the privacy of her current husband, who shared checking and savings accounts with her.

In March 1992, wife filed a motion to "clarify" the provisions of the original order regarding medical and dental care for the children.

Both motions were heard in August 1992, and were granted in the court's order entered October 14, 1992. As to support, the court did not consider gift, or maintenance income from either party, found wife had no income, and ordered husband to pay, based on his income, $1,341 per month as child support plus $4,906 in back payments.

As to medical care, the court ruled that henceforth all long-term medical decisions would be made by wife after consultation with husband, but that if husband did not agree with the decision, the decision would be made by wife, provided it was in accordance with the judgment of the family pediatrician.

## I.

Husband first contends that the trial court modified the prior legal custody determination as to health care decisions on its own motion without notice to the parties or an opportunity for him to present a case in opposition. This contention is without merit.

■ First, the issue was raised by wife's motion filed six months before the hearing.

Second, the record is replete with the testimony of both parties and husband's expert, plus legal argument, regarding resolution of the issue of medical care decision-making. Thus, at a minimum, the issue was tried by the implied consent of the parties, and, therefore, we find no procedural error. *See In re Marriage of Beckman,* 800 P.2d 1376 (Colo. App.1990).

Furthermore, husband's additional contention that he had no opportunity to request a new or updated custody evaluation or to present testimony from the custody evaluators used at the time of decree is belied by the record. Husband elicited testimony and a report from a member of the team who had previously performed custody evaluations in this case. That expert testified that giving the medical decision-making responsibility and power to the physical custodian would be harmful to the family relationship. Thus, we presume that the trial court considered and rejected this testimony. *See In re Marriage of Udis,* 780 P.2d 499 (Colo.1989).

■ Lastly, husband's failure to designate for the record on appeal any objection to the resolution of the motion to clarify on the basis that it was filed within two years of disposition of the prior motion for modification precludes him from raising such error on appeal. *See In re Marriage of Armbeck,* 33 Colo.App. 260, 518 P.2d 300 (1974).

■ Modification from sole legal custody to joint custody requires a determination that the best interests of the children will be served by such modification. *See In re Marriage of Wall,* 851 P.2d 224 (Colo.App.1992).

■ Here, the grant to wife of the responsibility to make long-term medical decisions when husband unreasonably withholds his approval must be "in accord with the recommendation of the current family pediatrician." Furthermore, "any long-term medical, dental or psychotherapy provider must be retained after consultation between the parties."

Therefore, the order effectively converts the parties into joint custodians with respect to the choice of medical, dental, and psychotherapy providers. In our view, the finding

that the best interests of the children required clarification of the parties' unusual agreement separating physical and legal custody is implicit in the order, *see In re Marriage of Dickman,* 670 P.2d 20 (Colo.App. 1983), and is supported by the record and by the practical considerations involved in implementing such an agreement. *See In re Marriage of Beyer,* 789 P.2d 468 (Colo.App. 1989). Accordingly, we find no error in the trial court's clarification concerning the medical care of the children.

## II.

In determining child support, the court applied *In re Marriage of Nordahl,* 834 P.2d 838 (Colo.App.1992), and found that there was no evidence that wife was not engaged in a good-faith effort to achieve a college education in order to further her income position. It therefore concluded that she was not voluntarily unemployed at the present time. The court also found that there was no evidence to show wife's potential income because husband's expert testified that she needed training before she could be considered to have potential income either as a word processing specialist or as a counselor in alcohol and drug rehabilitation.

Husband contends that the trial court erred in determining that wife was not voluntarily unemployed and in finding that the evidence failed to establish her potential income at the time of the hearing. We find no error.

■ The trial court is authorized under § 14–10–115(7)(a) and (b), C.R.S. (1987 Repl. Vol. 6B), to calculate child support based on a determination of a parent's potential income if the parent is "voluntarily unemployed or underemployed." *In re Marriage of Marshall,* 781 P.2d 177 (Colo.App.1989).

■ The court may interpret one parent's lack of initiative in finding or keeping work as a voluntary refusal to fulfill a support obligation, or it may determine that such spouse is engaged in a good-faith effort to achieve higher income, financial independence, or a career in the foreseeable future so long as such conduct is not intended to deprive a child of support and does not un-

reasonably reduce the support available to a child. *In re Marriage of Nordahl, supra.*

As the trial court recognized here, imputation of income in the latter case would unfairly penalize a spouse's effort at self-sufficiency and is contrary to the public policy of encouraging the financial independence of dependent spouses. *In re Marriage of Nordahl, supra.* This policy holds true even if, as here, the spouse has remarried.

■ Furthermore, pursuant to § 14–10–115(7)(b)(III), C.R.S. (1993 Cum Supp.), a person is not deemed to be voluntarily *underemployed* if that person is making a good faith career choice or the employment is temporary and is reasonably intended to result in higher income in the foreseeable future. Therefore, we agree with the trial court that, in the absence of a contrary direction by the General Assembly, the same rule should be applied in determining whether a spouse is voluntarily *unemployed.*

Finally, contrary to husband's arguments, a change in employment which has the primary purpose of increasing occupational fulfillment and does not unduly diminish economic support available to the child is an appropriate situation which § 14–10–115(7)(b)(III) was intended to cover. *Colorado Child Support Commission Report* at 17–18 (December 1, 1990).

■ Here, the evidence showed that wife, who had not worked for approximately nine years, had completed two years of study toward a bachelors degree in a three-year period. During that time, she had achieved a 3.72 grade point average while seeking a degree in the area of human services. The evidence also showed that wife had not attended school the previous year because of the death of her current spouse's mother and the hospitalization and continued medical complications and concerns of one of the children.

However, wife testified that she intended to continue her studies to obtain a degree and to pursue a career in drug and alcohol counseling. Thus, the trial court's determination that wife was engaged in a good faith effort to achieve a college education in order

to further her income position, and therefore was not voluntarily unemployed, is supported by the evidence.

Accordingly, while the evidence may have been subject to differing interpretations, we may not substitute our findings for those of the trial court. *See In re Marriage of Udis, supra.*

### III.

■ Husband also asserts that the trial court erred in denying his motion to compel certain discovery from wife. We find no reversible error.

In his discovery requests, husband defined "income" as "all funds available for your use, including gifts." He requested, as relevant here, that wife complete a financial affidavit; produce copies of all bank account and credit card statements; list all gifts, including without limitation, jewelry, clothes, entertainment, travel, and restaurant meals provided to her or the children by her current husband; list all amounts paid by wife's current spouse directly to wife or to third parties from which she received a benefit, listing by way of example, attorney's fees, maid service, cable television, mortgage payments, car and home repairs, insurance, and utilities; and list all assets purchased for which wife's spouse contributed.

Husband argues that the definition of "income" under the child support guidelines includes gifts and, therefore, that such discovery should have been allowed in order to determine wife's income or to determine deviation from the presumptive amount of support. We are not persuaded.

### A.

Gross income, as defined in the child support guidelines, includes *"income* from any source and includes *income* from ... gifts...." Section 14–10–115(7)(a)(I)(A), C.R.S. (1987 Repl.Vol. 6B) (emphasis added). Hence, the definition of "income" in husband's motion to compel is significantly broader than the definition of income set forth in the child support guidelines.

Also, since husband did not establish either that wife received monetary payments or, if so, that such payments were regularly received, the case of *Barnier v. Wells,* 476 N.W.2d 795 (Minn.App.1991) is not applicable.

■ Furthermore, because current spouses are usually not required to contribute support to stepchildren, few child support guidelines consider the income of a current spouse when determining income for child support purposes. R. Williams, *Development of Guidelines for Child Support Orders* at II–v, II–54–55, & II–91 (March 1987) (Final Report).

A practical reason why child support guidelines ignore stepparent income is that if such income were taken into account, it also would be necessary on grounds of equity to take into account such parent's financial responsibilities despite the small financial impact and additional complexity of including such income. *Final Report, supra,* at II–54–55.

Furthermore, we note that the practice of not including the income of current spouses in the determination of child support is consistent with the common law existing in this state prior to the adoption of the guidelines.

Under that law, the factors to be considered in making a child support award do not include the financial resources of a non-parent with whom the child is living, *see In re Marriage of Conradson,* 43 Colo.App. 432, 604 P.2d 701 (1979), the voluntary contributions of third-parties, *see Garrow v. Garrow,* 152 Colo. 480, 382 P.2d 809 (1963), or gifts made by a parent during a marriage and not in fulfillment of a court order to pay support. *See In re Marriage of Wolfert,* 42 Colo.App. 433, 598 P.2d 524 (1979).

Our child support guidelines are patterned after the Income Shares Model which is based on the concept that the child should receive the same proportion of parental income that he or she would have received if the parents lived together. *See* § 14–10–115(4)(a), C.R.S. (1987 Repl.Vol. 6B); *Final Report, supra,* at II–67.

Under that model, a current spouse's income is not relevant except in two limited

situations. *See Final Report, supra,* at II–67, II–80, II–91, and II–94. Those two situations include circumstances in which a parent is found to be voluntarily unemployed or underemployed or has a very low income. These circumstances are not applicable here.

### B.

Thus, with the exception of the financial affidavit and the account statements, we agree with the trial court that the information requested by husband was not relevant to the determination of the presumed amount of support. Accordingly, we conclude that the trial court did not abuse its discretion in denying the motion to compel. *See In re Marriage of Mann,* 655 P.2d 814 (Colo.1982).

Here, the trial court ordered the parties to exchange financial affidavits. Although account statements would ordinarily be relevant and required to be produced, it was undisputed that wife did not have any income other than that which husband argued should be imputed to her. Since the trial court found that wife was not voluntarily unemployed, the limited exception under the Income Shares Model allowing inquiry into the current spouse's income for the purpose of imputing income was not applicable. Consequently, husband's ability to establish wife's income was not impaired.

Finally, because we have concluded that the information requested by husband was not relevant to the determination of child support, we need not address the trial court's additional finding that production of the documents would invade the privacy of wife's current spouse.

### C.

In reaching the conclusion that the current spouse's income and the support provided indirectly by him to wife is not relevant, and therefore not subject to discovery, we are not unmindful that some jurisdictions have enacted statutory provisions imposing, under certain circumstances, an obligation upon a stepparent for the support of a child residing in that household. Others expressly provide that the income of the new spouse should not be included, and some list such income as one factor to consider in deviation. *See generally* Melli & Stanton, *Alimony, Child Support & Counsel Fees—Award, Modification & Enforcement* §§ 11.04[1] at 11–37 & 14.04[1] at 14–22 (1942); *see also Final Report, supra,* at II–54.

However, our General Assembly has chosen not to enact any provisions which would overrule the common law and require the consideration of a current spouse's income in the determination of child support. Nevertheless, annual reports are received from the child support commission and other modifications continue to be made to the child support guidelines after consideration of the recommendations of the commission.

Hence, we conclude that by the adoption of the child support guidelines, the General Assembly did not intend to change the common law rule set forth in *Conradson, Garrow,* and *Wolfert, supra. See In re Marriage of Eze,* 856 P.2d 75 (Colo.App.1993). Thus, the income of wife's current spouse is not relevant to the determination of child support.

Orders affirmed.

REED and RULAND, JJ., concur.