In re the Marriage of Nick
**NIMMO, Petitioner,**

and

**Margaret Elaine Seanor, f/k/a Margaret E. Nimmo, Respondent.**

**No. 94SC134.**

Supreme Court of Colorado,
En Banc.

March 13, 1995.

Law Office of Stephen J. Harhai, Stephen J. Harhai, Denver, for petitioner.

The Connell Law Firm, Raymond J. Connell, Kathryn M. Kaeble, Denver, for respondent.

Justice ERICKSON delivered the Opinion of the Court.

We granted certiorari to review *In re Marriage of Seanor*, 876 P.2d 44 (Colo.App. 1993).[1] The court of appeals concluded the trial court properly denied Nick Nimmo's motion to compel discovery of Margaret E. Nimmo's (now Margaret E. Seanor) (Ms. Seanor's) present spouse's income for purposes of section 14–10–115(7)(a)(I)(A), 6B C.R.S. (1987 & 1994 Supp.).[2] We affirm in part, reverse in part, and return this case to the court of appeals for remand for further proceedings consistent with this opinion.

I

A decree of dissolution of marriage was entered on May 4, 1989. In that decree, the trial court approved and incorporated the parties' separation agreement. Among other things, the agreement granted Ms. Seanor primary physical custody and Nimmo sole legal custody of the parties' two children. The agreement provided that Nimmo would pay maintenance to Ms. Seanor until June 1991. After June 1991, Nimmo would pay child support in accordance with section 14–10–115, 6B C.R.S. (1987 & 1994 Supp.).

In October 1991, Ms. Seanor filed a motion to increase child support payments. In preparation for the hearing, Nimmo submitted interrogatories in November 1991. The interrogatories sought information from Ms. Seanor regarding her income since June 1, 1991. Nimmo's definition of "income" included "all funds available for . . . [Ms. Seanor's] use, including gifts." Nimmo wanted a list of "all gifts, including without limitation, jewelry, clothes, entertainment, travel, and restaurant meals provided to . . . [Ms. Seanor] or to the children" by Ms. Seanor's present spouse (Mr. Seanor). Nimmo also requested a list of "all amounts paid by Mr. Seanor either directly to . . . [Ms. Seanor] or to third parties from which . . . [Ms. Seanor] received a benefit. . . ."[3] The interrogatories also

---

1. Certiorari was granted to review the issue of "[w]hether a party to a child support proceeding is entitled to discovery of sources of income of the other party, regardless of the source."

2. For calculating child support, § 14–10–115(7)(a)(I)(A) provides:
   "Gross income" includes income from any source and includes, but is not limited to, income from salaries, wages, including tips calculated pursuant to the federal internal revenue service percentage of gross wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, gifts, prizes, and alimony or maintenance received. Gross income does not include child support payments received.
   § 14–10–115(7)(a)(I)(A), 6B C.R.S. (1987 & 1994 Supp.).

3. "[F]or example, but not by way of limitation, attorney's fees, maid service, cable television, mortgage payments, car and home repairs, car

sought copies of checking account registers, bank statements, and credit card records.

When Ms. Seanor failed to provide answers to the interrogatories, Nimmo filed a motion to compel discovery. The trial court denied the motion on the grounds that the income and contributions of Mr. Seanor were immaterial to the determination of Nimmo's child support obligation. Also, because Mr. and Ms. Seanor shared checking and savings accounts, granting the motion would constitute an invasion of Mr. Seanor's privacy.[4]

In its order of October 14, 1992, the trial court granted Ms. Seanor's motion to increase Nimmo's child support payments. The trial court found Ms. Seanor had no income. Nimmo was ordered to pay, based on his income, $1,341 per month as child support plus $4,906 in back payments. Nimmo appealed.

The court of appeals found Nimmo's definition of income to be "significantly broader than the definition of income set forth in the child support guidelines." *Seanor*, 876 P.2d at 49. The court of appeals emphasized the common law rule that the income of third parties is not considered when determining income for child support purposes. *See id.* at 49-50. The court of appeals concluded child support guidelines did not change the common law rule and held that "the trial court did not abuse its discretion in denying the motion to compel." *Id.* at 50.

## II

C.R.C.P. 26(b)(1) allows parties to "obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." Child

support obligations are determined by establishing the "combined gross income" which "means the combined monthly adjusted gross incomes of both parents." § 14-10-115(10)(a)(II), 6B C.R.S. (1987 & 1994 Supp.). " '[A]djusted gross income' means gross income less preexisting child support obligations and less alimony or maintenance actually paid by a parent." *Id.* Using the statutory schedule, child support amounts are extrapolated based on the combined gross income and the number of children due support. *See* § 14-10-115(10)(b), 6B C.R.S. (1987 & 1994 Supp.). Each parent's obligation is determined by dividing the combined gross income "in proportion to their adjusted gross incomes." § 14-10-115(10)(a)(I), 6B C.R.S. (1987).

■ The statutory definition of " '[g]ross income' includes income from any source and includes, but is not limited to, income from salaries, wages, ... commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, gifts, prizes, and alimony or maintenance received." § 14-10-115(7)(a)(I)(A).[5] For purposes of calculating "gross income," the plain language of the statute "includes all payments from a financial resource, whatever the source thereof." *In re Marriage of Armstrong*, 831 P.2d 501, 503 (Colo.App.1992); *In re Marriage of Fain*, 794 P.2d 1086, 1087 (Colo.App.1990).

■ The court of appeals properly noted that the factors considered in determining child support at common law did not include

---

home, health, dental or other insurance, and utilities...."

4. The court of appeals did not address the invasion of privacy issue. *Seanor*, 876 P.2d at 50.

5. The court of appeals noted that the guidelines refer to " '*income* from any source and includes *income* from ... gifts....' " *See Seanor*, 876 P.2d at 49 (quoting § 14-10-115(7)(a)(I)(A)). An argument exists that only income produced from gifts is relevant to a determination of child support. Such an interpretation of the statute would produce an unsound and unreasonable result.

We are aware that various sources of income under the statute are treated differently for tax purposes. However, the statute makes no distinction between sources of income based on the federal or state tax codes. Also, because sources of income are "not limited to" the enumerated items of § 14-10-115(7)(a)(I)(A), domestic relations courts would be required to undergo a complex tax analysis to determine income under the guidelines. Such a tortured analysis thwarts the goals of the guidelines and explains why tax definitions are irrelevant to an interpretation of § 14-10-115. *See infra* note 7.

the financial resources of third-parties. *See In re Marriage of Seanor*, 876 P.2d 44, 49 (Colo.App.1993); *see also In re Marriage of Conradson*, 43 Colo.App. 432, 604 P.2d 701 (1979) (holding that the financial resources of an aunt with whom the child was living were not to be considered in making a support award); *Garrow v. Garrow*, 152 Colo. 480, 382 P.2d 809 (1963) (concluding that the contributions of third-parties were immaterial to a determination of father's duty of support). The opinion also correctly stated that "by the adoption of the child support guidelines, the General Assembly did not intend to change the common law rule set forth" in *Conradson* and *Garrow*. *Seanor*, 876 P.2d at 50. Based on these principles, the court of appeals concluded the income of Mr. Seanor was not relevant to the determination of child support. *See id.*

■■■ The court of appeals came to the correct conclusion concerning the discovery of Mr. Seanor's income. However, the focus of the court's opinion failed to adequately address the plain language of the child support guidelines. The source of money available to Ms. Seanor is not the relevant factor. *See Harris v. Superior Court*, 3 Cal.App.4th 661, 4 Cal.Rptr.2d 564, 567 (1992).[6] Instead, under the guidelines the existence of that money is the relevant inquiry. *See id.* The guidelines require an examination of the *existence* of parental income. The *source* of

that income is irrelevant to a determination of child support.

Income may come "from any source," and the definition of "gross income" expressly includes "gifts." § 14–10–115(7)(a)(I)(A). However, the income "could come from relatives, friends, investments, trusts, or the lottery." *Harris*, 4 Cal.Rptr.2d at 569. Because "gifts"[7] are included in calculating income for child support, we must determine whether Nimmo may discover Ms. Seanor's income as defined in section 14–10–115(7)(a)(I)(A). Concluding that Mr. Seanor's income is not relevant does not resolve Nimmo's motion to compel.

### III

Colorado's child support guidelines are based on the Income Shares Model. *Seanor*, 876 P.2d at 49. The Income Shares Model evolved from research establishing that a certain percentage of two-parent family income is spent on children. 2 Marygold S. Melli & Ann M. Stanton, *Alimony, Child Support & Council Fees—Award, Modification & Enforcement* § 14.04[1][a][i], at 14–17 to 14–18 (1992). The Income Shares Model, among others, was formulated in response to concerns that "child support award levels were too low, with the result that many children and custodial parents were thrust into poverty or suffered a seriously diminished standard of living while the noncustodial parent often had an improved living stan-

---

6. However, the California Court of Appeals also stated:

> Under ... [certain] facts, some discovery of a third party's financial records may be appropriate. An ex-husband, for example, upon moving in with a third party, is suddenly living in sumptuous surroundings, driving luxury cars and wearing expensive clothes. Depending upon what the discovery of the ex-husband reveals, discovery concerning financial contributions made by a third party to the ex-husband's living expenses may be appropriate.

*Harris*, 4 Cal.Rptr.2d at 567.

7. "[A] source of income under the child support guidelines is not determined by other definitions which may be used for federal or state income tax purposes." *In re Marriage of Armstrong*, 831 P.2d 501, 503 (Colo.App.1992); *see also In re Marriage of Fain*, 794 P.2d 1086, 1087 (Colo.App. 1990) ("[T]he more specific definition of 'gross income' in § 14–10–115 prevails over other defi-

nitions for federal and state income tax purposes."). Even though the federal and state income tax definitions are not controlling, Colorado's gift tax statute provides:

> Where the property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the fair market value of the property exceeded the value of the consideration, for the purpose of the tax imposed by this article, shall be deemed a gift and shall be included in computing the amount of gifts made, but this provision shall not apply to any transfer made without donative intent.

§ 39–25–107, 16B C.R.S. (1994); *see also Estate of Ramsey v. Dep't of Revenue*, 42 Colo.App. 163, 167, 591 P.2d 591, 594–95 (1979) ("To effect a valid inter vivos gift there must be clear and unequivocal intent to make a gift and consummation of such intention by the donor in some way relinquishing control of the gift property to the donee.").

dard." Diane Dodson, *A Guide to the Guidelines,* Fam.Advoc., Spring 1988, at 4, 5. The guidelines articulate the Income Shares Model by the statute's required calculation of "child support based upon the parents' combined adjusted gross income estimated to have been allocated to the child if the parents and children were living in an intact household...." *See* § 14–10–115(4)(a), 6B C.R.S. (1987); *Seanor,* 876 P.2d at 49; *see also* § 14–10–115(1)(c), 6B C.R.S. (1987) (promulgating as relevant factor for court's consideration in determination of child support "[t]he standard of living the child would have enjoyed had the marriage not been dissolved").

■■■ The guidelines were enacted to prevent a drastic decrease in the standard of living of children and custodial parents resulting from divorce. By ensuring child support obligations are proportionate to both parents' combined income, the guidelines attempt to rectify this dramatic decrease in lifestyle. The guidelines were not enacted to prevent an increase in a child's standard of living by denying a child the fruits of one parent's good fortune after a divorce. The standard of living of a child if the parents maintained their marriage is only one factor for the court to consider, which does not lock the child into a single standard of living until emancipation.

### IV

■■■ We are persuaded by the rule announced in *Barnier v. Wells,* 476 N.W.2d 795 (Minn.Ct.App.1991). In *Barnier,* the court stated "if a gift is regularly received from a dependable source, it may properly be used to determine the amount of a child support obligation." *Id.* at 797. The court found that the father received $833 per month from his father and periodic payments of $5,000 from his grandmother. *Id.* at 796.

■■■ The court of appeals found *Barnier* to be inapplicable "since husband did not establish either that ... [Ms. Seanor] received monetary payments or, if so, that such payments were regularly received...."

*Seanor,* 876 P.2d at 49. However, by not allowing Nimmo to discover Ms. Seanor's income "from any source," the court denied Nimmo the ability to "establish ... monetary payments" and "that such payments were regularly received."

Information sought through discovery "need not be admissible at the ... [hearing] [8] if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." C.R.C.P. 26(b)(1). Although Mr. Seanor's income is not discoverable, Nimmo must be able to discover Ms. Seanor's income to properly meet the motion to increase his child support payments. Attempts to discover Ms. Seanor's income "from any source" are "reasonably calculated to lead to the discovery of admissible evidence." Nimmo must be able to obtain information regarding gifts received by Ms. Seanor, so he can attempt to establish that they are "regularly received from a dependable source." *See Barnier,* 476 N.W.2d at 797. Without proper discovery Nimmo cannot establish the *Barnier* requirements.

Unspecified cash is the most subtle aspect of any support case. Lynne Z. Gold–Bikin, *Defining Income is the Key to Effective Lawyering,* Fam.Advoc., Spring 1988, at 13, 14. Although the client may be sure the cash exists, the lawyer may not be able to prove the presence of the cash because of the speculative nature of the claim. *Id.* The importance of parental income in the guidelines makes discovery and proof of income a crucial part of any support case. *See* 2 Marygold S. Melli & Ann M. Stanton, *Alimony, Child Support & Counsel Fees—Award, Modification & Enforcement* § 14.04, at 14–15 (1992).

■■■ Pursuant to section 14–10–115(7)(a)(I)(A) Nimmo may not discover the source of Ms. Seanor's income. However, Nimmo may discover the existence of Ms. Seanor's income, "whatever the source thereof." *See In re Marriage of Armstrong,* 831 P.2d 501, 503 (Colo.App.1992); *In re Marriage of Fain,* 794 P.2d 1086, 1087 (Colo.App.1990).

8. Proposed C.R.C.P. 26.2 dealing with discovery in domestic relations cases uses "hearing" instead of "trial."

When attempting to establish gift income, a party is subject to the same requirements of proof he or she would face trying to show any other type of income. In a hearing to determine child support, a party must establish with reasonable certainty that the amounts are regularly received from a dependable source. Claims that are too speculative may not be used to determine child support. However, receipt of periodic checks, as in *Barnier*, may be more easily established.

▮▮▮ This analysis supports the discovery request for all amounts paid by Mr. Seanor directly to Ms. Seanor. However, it does not extend to amounts paid by Mr. Seanor to third parties for cable television, mortgage payments, car and home repairs, insurance or utilities. The amounts Mr. Seanor may pay to provide himself and his family with certain necessities should not be considered as income to Ms. Seanor. Mr. Seanor is not making a gift of income to Ms. Seanor by paying these expenses. He is satisfying the household's obligations. The fact Ms. Seanor may receive some benefit does not convert the payment into income. It appears this discovery request for the household expenses is an indirect attempt to determine Mr. Seanor's income, which, as previously noted, is irrelevant.

▮▮▮ Discovery of the receipt of isolated and irregular tokens would also not be permissible. Mementos or keepsakes do not qualify as "gifts" for purposes of the child support guidelines. These occasional presents fall outside the statute. They are not relevant to a determination of child support because they are not regularly received from a dependable source. Also, the speculative nature of these items, combined with their irrelevance, prevents their discovery.

Accordingly, we affirm the court of appeals decision to not permit the discovery of Mr. Seanor's income and reverse the court of appeals denial of Mr. Nimmo's motion to compel discovery of Ms. Seanor's income. We return this case to the court of appeals for remand to the district court for further proceedings consistent with this opinion.

Justice MULLARKEY concurs in part and dissents in part.

Justice KIRSHBAUM does not participate.

Justice MULLARKEY concurring in part and dissenting in part:

The majority affirms in part and reverses in part the court of appeals' decision in *In re Marriage of Seanor*, 876 P.2d 44 (Colo.App. 1993). Because I would affirm the court of appeals' decision, I respectfully dissent from the partial reversal.

The majority in this case holds that "[t]he source of money available to Ms. Seanor is not the relevant factor," maj. op. at 1006, and, in order to determine Ms. Seanor's income, the majority allows discovery of all amounts Mr. Seanor has paid directly to her. *Id.* at 1008. It excludes direct payments made by Mr. Seanor to third parties for household expenses. *Id.* Because I do not believe that such family expenses, whether paid by Ms. Seanor with cash provided to her by Mr. Seanor or paid by Mr. Seanor directly to third parties, are "income" under the Uniform Dissolution of Marriage Act (UDMA), I would hold that none of the information requested in the interrogatories is discoverable.

Under C.R.C.P. 26, discovery is permitted for "any matter, not privileged, which is relevant to the subject matter involved in the pending action...." The purpose of discovery is to include production of all relevant evidence, to eliminate surprises at trial, and to simplify issues. *J.P. v. District Court In and For 2nd Judicial Dist. of Denver*, 873 P.2d 745 (Colo.1994). Parties are permitted to discover evidence that is relevant or reasonably calculated to lead to the discovery of relevant information. *Martinelli v. District Court In and For City & County of Denver*, 199 Colo. 163, 612 P.2d 1083, (1980).

In the motion to compel answers to interrogatories, Mr. Nimmo requests the following:

6. List all gifts, including without limitation, jewelry, clothes, entertainment, travel, and restaurant meals, provided to you or to the children of the marriage by Terry

Seanor since May 1990, separately identifying the values of each at the time such gifts were provided.

7. List all amounts paid by Mr. Seanor either directly to you or to third parties from which you have received a benefit (for example, but not by way of limitation, attorney's fees, maid service, cable television, mortgage payments, car and home repairs, car, home, health, dental or other insurance, and utilities), separately identifying each payee and the amount received by each and the purpose of the payment.

8. List all assets that you have purchased for which Mr. Seanor has contributed to the cost, separately identifying for each asset the dollar amounts paid by you and Mr. Seanor.

List any health, automobile, homeowners or other insurance covering you or your assets, separately identifying in each case the premiums paid thereon, and whether the payments are paid by you or another person, naming such person.

I interpret this motion to request discovery of all the ordinary and necessary household expenses paid by Mr. Seanor for his household which includes Ms. Seanor and Mr. Nimmo's children. In my view, this information is not relevant and therefore not discoverable because: (1) such expenses are not income to Ms. Seanor for purposes of the child support guidelines; (2) the stepparent, Mr. Seanor, has no obligation to support Mr. Nimmo's children; and (3) this discovery request is an impermissible attempt to circumvent the trial court's refusal to impute income to Ms. Seanor because the court found that Ms. Seanor was not intentionally unemployed or underemployed.

First, nothing in the child support guidelines specifically defines items normally purchased and consumed within a family relationship as income.[1] The child support guidelines attempt to calculate "child support based upon the parents' combined adjusted gross income ... [as] if the parents and children were living in an intact household." § 14–10–115(4)(a), 6B C.R.S. (1987). The stepparent's income and his support of his family unit thus are not relevant because that income and support would not be available if the parents and children were living in an intact household.

Second, the effect of allowing discovery of expenses paid by Mr. Seanor is to ascribe support obligations to the stepparent by imputing portions of his income to Ms. Seanor. Under existing law, courts should not consider the income of a stepparent when determining income for child support purposes unless the stepparent adopts the child. *See In re Marriage of Conradson*, 43 Colo.App. 432, 604 P.2d 701 (1979). Had the legislature intended to include any aspect of a stepparent's income when determining child support responsibility, it would specifically be included under section 14–10–115(7)(a)(I)(A). Because the legislature has not included such a consideration, expenses paid from Mr. Seanor's income are irrelevant to determining child support. *See* R. Williams, *Development of Guidelines for Child Support Orders* (1987); *Marriage of Conradson*, 43 Colo.App. at 432, 604 P.2d at 701.

Third, the discovery is an attempt to circumvent the trial court's ruling on imputed income. The child support guidelines allow the court to impute income to a parent if that parent chooses not to work. To more equally divide the child support obligations under section 14–10–115(7)(b)(I), "[i]f a parent is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income." In this case, however, the trial court refused to impute income to Ms. Seanor, finding that she was not presently employable. Thus, the trial court has already determined that any benefits obtained by Ms. Seanor as a result of her new relationship do not reflect income that could be imputed to Ms. Seanor.

---

1. Section 14–10–115(7)(a)(I)(A), 6B C.R.S. (1987 & 1994 Supp.), defines gross income, in relevant part, as:

income from any source, and includes, but is not limited to income from salaries, wages, including tips calculated pursuant to the federal internal revenue service percentage of gross wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, gifts, prizes, and alimony or maintenance received.

Finally, I emphasize that payment of ordinary household expenses is not fairly characterized as a gift from one spouse to the other. Whether employed outside the home or not, each spouse makes a contribution to the family unit which takes the payment of household expenses by one spouse out of the gift category. Moreover, I disagree with the majority's definition of gift. The court holds that "gifts" under the UDMA are relevant to a determination of child support when a gift is "regularly received from a dependable source." Maj. op. at 1008. Although a gift may be regularly received from a dependable source, it may also be a one-time gift. Under the Colorado gift tax statute, for instance, where property is transferred for less than adequate and full consideration in money, the amount by which the fair market value of the property exceeds the value of the consideration shall be deemed a gift. § 39–25–107, 16B C.R.S. (1994). Although the tax definition is not controlling, it lends support to my view that a gift can be a single transaction rather than a "regular occurrence."

In conclusion, I would rule that none of the information requested by Mr. Nimmo is relevant to determining Ms. Seanor's income because the enumerated expenses normally arise from a marital relationship. As such, they cannot be construed as income and are not discoverable. I would also hold that a gift does not have to be regularly received from a dependable source under the UDMA.