24CA1734 Marriage of Chartier 02-12-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1734
Larimer County District Court No. 23DR30046
Honorable Laurie K. Dean, Judge

---

In re the Marriage of

Mara Louise Chartier,

Appellee,

and

Scott Leonard Chartier,

Appellant.

---

JUDGMENT AFFIRMED
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE SCHOCK
Harris and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 12, 2026

---

Reilly, Vandenberg & Biggers, LLC, Lindsay W. Reilly, David P. Vandenberg, Fort Collins, Colorado, for Appellee

Harris Law Firm, PLLP, Katherine O. Ellis, Denver, Colorado, for Appellant

¶ 1     In this dissolution of marriage case between Scott Leonard Chartier (husband) and Mara Louise Chartier (wife), husband appeals those portions of the permanent orders concerning maintenance and child support. We affirm the judgment and remand the case for further proceedings on wife's request for appellate attorney fees under section 14-10-119, C.R.S. 2025.

## I.     Background

¶ 2     Husband works in the technology industry and has historically received salary and performance-based bonuses. He has also received income from two premarital businesses — Scream & Zizz Fireworks, Inc., a retail fireworks company, and Edison Properties LLC, a company that owns a building and rents space to Scream & Zizz and a residential tenant. Wife was primarily a homemaker during the marriage but, in 2020, began working as an administrative assistant at the parties' children's private school.

¶ 3     In 2024, the district court dissolved the parties' marriage and entered permanent orders, dividing the marital estate relatively equally. In considering wife's request for maintenance, the court found that wife's gross income was $3,100 per month, rejecting husband's argument that she was voluntarily underemployed as an

1

administrative assistant. It found that husband's annual gross income from his base salary and separate businesses was approximately $271,900 ($22,650 per month), consisting of $250,000 from his salary, $19,300 from Scream & Zizz, and $2,600 from Edison Properties. The court also found that husband had the potential to receive an additional $105,000 annually in bonuses.

¶ 4 The court then ordered a "two step approach" to maintenance. First, it directed husband to pay wife monthly maintenance in the amount of $5,500 for ten years. The court credited husband for the year he paid temporary maintenance, leaving nine years remaining. Second, the court directed husband to pay wife a percentage of his future after-tax bonuses each year for the next nine years — forty percent in 2024 and 2025, and thirty percent from 2026 to 2032.

¶ 5 The court allocated parenting time for the parties' minor children equally and ordered husband to pay wife child support of $353 per month in accordance with the child support guidelines.

## II. Maintenance

¶ 6 Husband appeals the district court's award of maintenance on several grounds. He argues that the district court erred by (1) failing to address the threshold question of whether wife lacked

2

sufficient property and income to support herself and provide for her reasonable needs; (2) miscalculating wife's income; (3) including husband's business income in his gross income; (4) improperly relying on the maintenance guidelines; (5) ordering maintenance for ten years; and (6) requiring husband to pay wife a portion of his future annual bonuses.  We address and reject each contention.

### A.    Applicable Law and Standard of Review

¶ 7    When a party requests maintenance, the court must first make initial findings concerning the parties' incomes, the division of the marital property, the parties' financial resources, the parties' reasonable financial need, and the deductibility and taxability of the maintenance award.  § 14-10-114(3)(a)(I)(A)-(E), C.R.S. 2025.

¶ 8    The court must then determine the amount and term of maintenance, if any, that is fair and equitable to both parties. § 14-10-114(3)(a)(II).  In making this determination, the court considers the advisory guideline term of maintenance and, if the parties' combined annual gross income does not exceed $240,000, an advisory guideline amount.  § 14-10-114(3)(a)(II)(A), (3)(b), (3.5). It must also consider the statutory factors in section 14-10-114(3)(c).  § 14-10-114(3)(a)(II)(B).  And finally, the court

must consider whether the party requesting maintenance lacks sufficient property to provide for their reasonable needs and is unable to support themselves through appropriate employment. § 14-10-114(3)(a)(II)(C), (3)(d).  The court may award maintenance only if this threshold requirement is satisfied.  § 14-10-114(3)(d).

¶ 9    We review a maintenance award for an abuse of discretion.  *In re Marriage of Tooker*, 2019 COA 83, ¶ 12.  A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law.  *In re Marriage of Herold*, 2021 COA 16, ¶ 5.  We defer to the district court's factual findings unless they are clearly erroneous, meaning they have no support in the record.  *In re Marriage of Capparelli*, 2024 COA 103M, ¶¶ 30-31.

## B.    Threshold Requirement

¶ 10    We first reject husband's contention that the district court failed to address the threshold question of whether wife lacked sufficient property to provide for her reasonable needs and was unable to support herself through appropriate employment.

¶ 11    After making initial findings under section 14-10-114(3)(a)(I) and considering the factors in section 14-10-114(3)(a)(II) and (3)(c), the district court expressly found that wife "lacks sufficient property

4

to provide for her reasonable needs and is currently unable to support herself through appropriate employment absent an award of maintenance." *See* § 14-10-114(3)(a)(II)(C), (3)(d). Its findings sufficiently explained the basis for that determination.

¶ 12     In particular, the court found that:

- wife had not worked outside the home for nearly fifteen years as a result of the parties' joint economic decision, *see* § 14-10-114(3)(c)(VI), (VII), (X);

- wife had significantly fewer financial resources than husband, *see* § 14-10-114(3)(a)(I)(C), (3)(c)(I);

- wife presently earned $3,100 per month, *see* § 14-10-114(3)(a)(I)(A);

- wife's after-tax income would not cover her housing expenses, let alone her other necessary costs, *see* § 14-10-114(3)(a)(I)(D), (3)(c)(I);

- husband was the family's sole source of income for most of the marriage, and his income (at least $22,650 per month) was approximately five times wife's, *see* § 14-10-114(3)(a)(I)(A), (3)(c)(II), (3)(c)(X);

- wife's actual income and potential earning ability had always been lower than husband's income and earning ability, and "likely [would] always be lower," *see* § 14-10-114(3)(a)(I)(C), (3)(c)(I), (3)(c)(V), (3)(c)(VI);

- wife was relying on financial support from others to meet her needs, *see* § 14-10-114(3)(a)(I)(C), (3)(c)(I);

- the marital estate was divided about equally, *see* § 14-10-114(3)(a)(I)(B), (3)(c)(IV);

- the "parties enjoyed a comfortable lifestyle during the marriage" but likely could not sustain the exact same lifestyle they had enjoyed after the divorce, *see* § 14-10-114(3)(a)(I)(D), (3)(c)(III); and

- husband was paying wife temporary maintenance, which was initially set at $8,500 per month and later reduced to $3,000 per month, *see* § 14-10-114(3)(c)(VIII).

¶ 13   The record supports these findings and the court's determination that wife met the threshold requirement for maintenance. *See In re Marriage of Bartolo*, 971 P.2d 699, 701 (Colo. App. 1998) ("The determination of the threshold need entitling a spouse to an award of maintenance is a question of

6

fact. . . . [W]hen the order is supported by competent evidence, it should not be disturbed on review."). Specifically, wife testified that she had been a homemaker during most of the marriage and relied on husband's income to meet her needs — a point that husband also acknowledged. She explained that she only recently returned to work as an administrative assistant, making $3,100 per month, and that she could not afford her reasonable expenses based on her income alone. Instead, she relied on temporary maintenance, withdrawals from the parties' home equity line of credit, and financial support from her father to meet her needs. She also described the parties' comfortable standard of living during the marriage, explaining that their children attended a private school, they lived in a million-dollar home, and they took many vacations.

¶ 14    Husband contends that the court's determination concerning wife's need for maintenance is inconsistent with its finding that some of her reported expenses were unsustainable, unreasonable, or unlikely to continue. But while the court questioned some of wife's monthly expenses, its findings suggested that at least $6,000 of her reported monthly expenses — well in excess of her $3,100

monthly income — were reasonable and that, in addition to those expenses, she would also incur necessary housing expenses.

¶ 15    Reasonable needs must be liberally construed based on the parties' particular facts and circumstances. *In re Marriage of Yates*, 148 P.3d 304, 313 (Colo. App. 2006). A court does not need to limit maintenance to an amount that merely satisfies the party's basic needs. *See id.* Instead, the court may consider the parties' standard of living during the marriage as a "starting point" for its determination of a party's reasonable needs. *In re Marriage of Thornhill*, 232 P.3d 782, 789 (Colo. 2010). Thus, we are not persuaded that the court's rejection of *some* of wife's reported expenses undermines its determination that she still could not independently meet her reasonable needs without maintenance.

¶ 16    Husband also asserts that wife's receipt of substantial liquid assets from the marital estate allowed her to meet her reasonable needs. But a party is not required to deplete their share of the marital estate to qualify for maintenance. *See In re Marriage of Morton*, 2016 COA 1, ¶ 26. And it is for the district court, not us, to evaluate conflicting evidence and weigh the relevant circumstances when reaching its decision. *See In re Marriage of Evans*, 2021 COA

141, ¶ 45 ("We are not at liberty to re-evaluate the conflicting evidence and set aside findings supported by the record.").

### C.  Wife's Income

¶ 17  Husband next contends that the district court erred in determining wife's income by (1) failing to impute income to her based on her voluntary underemployment; (2) finding that the difference between her actual income and her potential income was not significant; (3) excluding the discount on the children's tuition that she receives as a benefit of her employment; and (4) excluding gifts she receives from her family.  We see no reversible error.

### 1.  Voluntary Underemployment

¶ 18  A court generally determines maintenance based on the parties' actual gross incomes.  § 14-10-114(3)(a)(I)(A), (8)(a)(II).  But if a party is voluntarily underemployed, the court considers their potential income instead.  § 14-10-114(8)(c)(IV); *In re Marriage of Collins*, 2023 COA 116M, ¶ 29.  A party is voluntarily underemployed when they shirk their support obligation by unreasonably foregoing higher paying employment.  *Collins*, ¶ 29.  A party is not voluntarily underemployed when their employment represents a good faith career choice.  § 14-10-114(8)(c)(V)(B).

¶ 19    Whether a party is underemployed for purposes of imputing income is predominantly a question of fact, and we may not disturb the district court's finding if the record supports it. *Collins*, ¶ 30.

¶ 20    Husband argues that wife was voluntarily underemployed as an administrative assistant because she previously worked as an elementary school teacher, had a master's degree in teaching, and could earn a higher income as a teacher. But wife testified that she stopped working in 2004 to stay home and care for the parties' children. She explained that she returned to the workforce as an administrative assistant in 2020 because the schedule allowed her to continue to support the family needs and the job gave the parties a discount on their children's private school tuition. She also said she could not return to teaching because her license was inactive.

¶ 21    The district court credited this testimony and found that wife's employment as an administrative assistant was a good faith career choice. *See* § 14-10-114(8)(c)(V)(B). It explained that wife had stopped teaching almost twenty years ago to support the family, did not have an active teaching license, and had been out of the workforce for at least fifteen years before she took the job as an administrative assistant. It further noted that because wife began

this job a few years before the dissolution case, it was not persuaded that she did so to avoid her support obligation.

¶ 22     Husband argues that the court's finding was unsound because it improperly focused on wife's decision to take the job in 2020, rather than her present circumstances. But nothing in the court's order suggests that its analysis was confined to the circumstances in 2020. Wife testified not only about her reasons for taking the job as an administrative assistant, but also her reasons for remaining in the position. The court found her testimony credible and, based on the totality of circumstances, determined that her decision to continue to work as an administrative assistant was a good faith career choice. Because the record supports the district court's findings, we will not disturb its decision. *See Collins*, ¶ 30.

2.     Difference Between Actual and Potential Income

¶ 23     Husband also argues that the district court erred by finding that the difference between wife's actual income as an administrative assistant ($37,250 per year) and her potential income as a teacher ($52,200 per year) was not significant.

¶ 24     But the district court made this observation merely as "further support[]" for its finding that wife was not underemployed. As we

11

have explained above, the court also found, with record support, that wife's employment as an administrative assistant was a good faith career choice. That finding alone was sufficient to sustain the court's finding that wife was not underemployed. *See* § 14-10-114(8)(c)(V)(B). Thus, even assuming the court understated the difference between wife's actual and putative potential income, husband does not explain how that error affected the maintenance award. It therefore does not provide a basis for disturbing the award. *See* C.A.R. 35(c) ("The appellate court may disregard any error or defect not affecting the substantial rights of the parties.").

### 3. Tuition Discount

¶ 25　　Husband next contends that the district court erred by excluding from wife's gross income the discount her employer gave her on the children's private school tuition. We again disagree.

¶ 26　　A party's gross income includes "[e]xpense reimbursements or in-kind payments received by a party in the course of employment . . . if they are significant and reduce personal living expenses." § 14-10-114(8)(c)(I)(X). But to be included as gross income, benefits received by a party must be "available for the individual's discretionary use or to reduce daily living expenses." *Tooker*, ¶ 18.

¶ 27    Wife testified that, as a benefit of her employment at the children's school, the children's tuition was discounted by fifty percent — $6,000 annually at the time of permanent orders. But nothing in the record indicated that this discount was a "payment received by [wife]" or that it was available to "reduce [her] personal living expenses." § 14-10-114(8)(c)(I)(X); *see also Tooker*, ¶¶ 18-20 (holding that tuition assistance was properly excluded from income where it was paid directly to the college and could not be used for "general living or other discretionary expenses"). To the contrary, it could be used only to reduce the children's tuition — a benefit that, notably, inured to both parties, who shared the cost of the tuition.

¶ 28    The district court therefore did not err by excluding the tuition discount from wife's gross income.

### 4.    Financial Gifts from Wife's Family

¶ 29    Husband testified that wife received substantial financial gifts from her family. He argued in the district court, and argues on appeal, that these gifts should have been included in wife's income.

¶ 30    Gross income includes "monetary gifts," § 14-10-114(8)(c)(I)(U), if they are "regularly received from a dependable source," *In re Marriage of Nimmo*, 891 P.2d 1002, 1008 (Colo. 1995).

13

¶ 31    Wife acknowledged that, during the dissolution proceedings, her father loaned her money and paid her monthly car payments. But she testified that this financial support was only intended to "bridge the gap" until the marriage was dissolved and her financial situation was resolved. She also said the support was not typical, and she did not expect it to continue after the dissolution. Husband disagrees, highlighting that wife's father had been consistently paying her car payments since she purchased the car.

¶ 32    The district court acknowledged the gifts (including the monthly car payments), heard the conflicting testimony, and found that the money was not "regularly received." *See Nimmo*, 891 P.2d at 1008. Because that finding has record support, we may not disturb it. *See Capparelli*, ¶ 30; *Evans*, ¶ 45. The district court therefore did not err by excluding these gifts from wife's income.

### D.    Husband's Business Income

¶ 33    Husband asserts that the district court erred by including his income from Scream & Zizz in his gross income. We disagree.

¶ 34    A party's gross income does not include income from additional jobs that result in employment of more than forty hours per week or more than what would otherwise be considered full-

14

time employment. § 14-10-114(8)(c)(II)(C). But it does include a party's income from closely held corporations beyond their salary from primary employment. § 14-10-114(8)(c)(I)(W); *In re Marriage of Upson*, 991 P.2d 341, 343 (Colo. App. 1999), *disapproved of on other grounds by*, *In re Marriage of Boettcher*, 2019 CO 81.

¶ 35    In addition to his full-time employment at Zimperium, husband was the sole owner of Scream & Zizz — a fireworks business that husband testified operated only two to three weeks each summer. Husband explained that he typically hired family members or other community members to sell the fireworks and that the business supplied him with additional income each year.

¶ 36    These circumstances support the district court's finding that husband's income from Scream & Zizz was "business income" from a closely held corporation, not income from secondary employment. *See* § 14-10-114(8)(c)(I)(W), (8)(c)(II)(C); *Upson*, 991 P.2d at 343. The district court thus properly included it in husband's gross income.

E.    Extrapolation from Maintenance Guidelines

¶ 37    Husband next contends that the district court improperly relied on an extrapolation from the advisory statutory guidelines in calculating the amount of maintenance. We are not persuaded.

¶ 38    When, as here, the parties' combined annual adjusted gross income exceeds $240,000, the statutory calculation of a guideline amount of maintenance does not apply.  § 14-10-114(3.5).  Instead, the court must consider the factors in section 14-10-114(3)(c) in determining the maintenance amount.  § 14-10-114(3.5).

¶ 39    The district court in this case did exactly that.  It first noted correctly that, because the parties' adjusted gross income is "above the maintenance guidelines . . . there is no maintenance guideline calculation."  It continued by correctly recognizing that, "[b]ecause the maintenance guidelines do not apply," it would consider the factors in section 14-10-114(3)(c).  And then it did so.  After separately addressing each statutory factor, it determined that a fair and equitable amount of maintenance was $5,500 per month, plus a percentage of husband's after-tax bonuses each year.

¶ 40    Although the maintenance award was close to the statutory calculation in section 14-10-114(3)(b), the district court gave no indication that it was applying, or "extrapolating from," that calculation.  Instead, it thoroughly addressed each of the section 14-10-114(3)(c) factors and made clear that its award was based on those factors.  *See* § 14-10-114(3.5).  The court's findings — which

are supported by the record — sufficiently explained the basis for its decision. *See In re Marriage of Wright*, 2020 COA 11, ¶ 20.

¶ 41     Thus, the district court adhered to the statutory process for determining the maintenance amount and awarded an amount of maintenance based on the relevant facts and circumstances. We perceive no abuse of discretion in that decision. *See Tooker*, ¶ 12.

## F.    Maintenance Term

¶ 42     Husband challenges the maintenance term only on the ground that the district court's findings were insufficient. We disagree.

¶ 43     In determining the appropriate term of maintenance, the court considers the guideline term based upon the duration of the marriage. § 14-10-114(3)(a)(II)(A), (3)(b)(II)(A), (3.5). Unlike the *amount* of maintenance, the guideline *term* of maintenance may apply regardless of the parties' income. § 14-10-114(3.5). And when the marriage exceeds twenty years, the court may not award maintenance for less than ten years unless it makes specific findings to support a reduced term. § 14-10-114(3)(b)(II)(A). The court's findings must be "sufficiently explicit . . . to give the reviewing court a clear understanding of the basis of its order." *In re Marriage of Stradtmann*, 2021 COA 145, ¶ 32 (citation omitted).

¶ 44 The parties were married for more than twenty years. In determining the term (and amount) of maintenance, the court explicitly considered each of the factors in section 14-10-114(3)(c), including the duration of the marriage. The court also noted that the parties' joint economic decision years earlier had taken wife out of the workforce for nearly fifteen years. Based on these considerations, the court found that ten years — the presumptive guideline term — with a credit for the one year of temporary maintenance husband had paid, was fair and equitable.

¶ 45 Given the guideline term of maintenance for an over-twenty-year marriage and the record support for the court's findings on the statutory factors, we conclude that those findings were sufficient to give us a clear understanding of the basis of the order.

## G. Husband's Bonuses

¶ 46 Husband finally argues that the district court erred by ordering him to pay a percentage of his future annual bonuses to wife as maintenance. He characterizes this ruling as an improper allocation of his separate property to wife. We disagree with this characterization. The district court took the bonuses into account

as income for purposes of determining maintenance. It did not allocate those post-divorce earnings to wife as marital property.

¶ 47 A party's post-divorce earnings are separate property and are "immunized from" the property division. *In re Marriage of Hunt*, 909 P.2d 525, 532 (Colo. 1995). Thus, a court may not divide a future bonus as marital property when the necessary conditions for the bonus have not yet been achieved. *See In re Marriage of Turner*, 2022 COA 39, ¶¶ 17-19. But a party's gross income for purposes of determining maintenance includes bonuses. § 14-10-114(8)(c)(I)(E). And when the court finds that a party's income will fluctuate, the court may order the party to pay as maintenance a percentage of their fluctuating income. *See Reap v. Reap*, 350 P.2d 1063, 1065-66 (Colo. 1960); *see also In re Marriage of Ostler*, 272 Cal. Rptr. 560, 567-71 (Ct. App. 1990) (affirming maintenance award consisting of fixed amount and percentage of future bonuses).

¶ 48 That is what happened in this case. Husband testified that, in addition to his regular salary, he had consistently received annual performance-based bonuses ranging from $36,000 to $142,000. He had recently started a new job that offered an annual bonus of up to $105,000, but he did not yet know the bonus structure or how

19

much of that amount, if any, he was likely to receive. Based on this testimony, the district court found that husband was likely to receive *some* bonus, but it could not fairly determine how much.

¶ 49 That left the court with a dilemma in calculating husband's gross income. If the court based husband's gross income on the maximum bonus amount, as wife requested, it risked substantially overstating husband's income. If it based husband's gross income solely on his base salary with no bonus, as husband requested, it risked substantially understating husband's income and giving husband a windfall. Rather than opting for one of these extremes, either of which might have been inconsistent with the facts, the court opted for what it called a "two step approach," ordering a set amount of maintenance tied to the base salary and an additional amount of maintenance tied to the bonuses. This approach ensured that the maintenance award was based on husband's actual gross income rather than the parties' competing speculation about what his income might be. *See* § 14-10-114(3)(a)(I)(A).

¶ 50 In adopting this approach, the court did not give wife an interest in husband's post-divorce earnings. *See Hunt*, 909 P.2d at 532. It determined a fair and equitable maintenance amount that

took into account the full scope of husband's gross income. Given the uncertainty and fluctuation of the bonuses, the district court did not abuse its discretion by awarding maintenance equal to a percentage of that income. *See Reap*, 350 P.2d at 1065-66.

### III. Child Support

¶ 51 Husband's appeal of the child support order is based entirely on his argument that wife was voluntarily underemployed and, thus, should have had income imputed to her. But we have concluded above that the district court did not clearly err by finding that wife was not voluntarily underemployed.[1] We reject husband's challenge to the child support order for the same reasons. *See Wright*, ¶ 21 n.3 ("[T]he analysis of voluntary underemployment [in a child support case] is the same [as] in a maintenance case.").

### IV. Appellate Attorney Fees

¶ 52 Wife requests an award of her appellate attorney fees under section 13-17-102(4), C.R.S. 2025, on the ground that husband's appeal lacks substantial justification. We deny this request.

---

[1] The district court made the same finding in calculating child support, finding that wife's career choice is not "intended to deprive the children of support or unreasonably reduce the support available to the children." *See* § 14-10-115(5)(b)(III)(B), C.R.S. 2025.

Although husband has not prevailed, his appeal was not so lacking in rational argument as to warrant an award of fees. *See Glover v. Serratoga Falls LLC*, 2021 CO 77, ¶ 70 (noting that awards of attorney fees for frivolous appeals should be reserved for "clear and unequivocal" cases involving "egregious conduct" (citation omitted)).

¶ 53 Wife also requests an award of her appellate attorney fees under section 14-10-119 based on the purported financial disparity between the parties. Because the district court is better equipped to resolve the factual issues associated with this request, we remand the case to the district court to address wife's request. *See* C.A.R. 39.1; *In re Marriage of Alvis*, 2019 COA 97, ¶ 30.

## V.    Disposition

¶ 54 The judgment is affirmed, and the case is remanded to the district court for further proceedings on wife's request for appellate attorney fees under section 14-10-119.

JUDGE HARRIS and JUDGE JOHNSON concur.