In re the Matter of Renee BARNIER,
a/k/a Renee Barnier Wilson,
petitioner, Respondent,

v.

Thomas Bucklin WELLS, Appellant.

No. C9–91–784.

Court of Appeals of Minnesota.

Nov. 5, 1991.

Wm. David Taylor, III, Fredrikson & Byron, P.A., Minneapolis, for respondent.

Daniel J. Goldberg, Moss & Barnett, Minneapolis, for appellant.

Considered and decided by HUSPENI, P.J., and PETERSON and AMUNDSON, JJ.

## OPINION

AMUNDSON, Judge.

Appellant Thomas Bucklin Wells challenges the trial court's judgment increasing his monthly child support obligation from $300 to $1,000; directing him to pay insurance and medical expense arrearages; and awarding respondent $20,000 in attorney fees. We affirm in part, reverse in part and remand.

## FACTS

Respondent Renee Barnier, n/k/a Renee Barnier Wilson, gave birth to a child in November 1987. Wilson brought a paternity proceeding in December 1987 and appellant Thomas Wells was adjudicated the biological father. The parties stipulated to the amount of Wells' child support obligation.

In March 1988, a referee issued an order that 1) gave Wilson sole legal and physical child custody; 2) established a visitation schedule; and 3) directed Wells to pay monthly child support of $300, the child's medical and dental insurance premiums and one-half of the child's medical and dental expenses not covered by insurance.

The referee calculated Wells' child support obligation based upon his stipulation and affidavit that he was unemployed and receiving $1,200 per month from a trust created by his great-grandmother. The parties' stipulation was incorporated into the order, in which Wells agreed to update his employment status and income.

In November 1990, Wilson moved to have Wells reimburse her for the child's insurance premiums, medical and dental expenses and attorney fees. She alleged Wells committed fraud on the court in 1988 by concealing the true amount of his income.

In April 1991, the trial court increased Wells' monthly child support obligation to $1,000; ordered he pay insurance premium and medical and dental expense arrearages; and awarded Wilson $20,000 in attorney fees. The court found that when the 1988 order was entered, in addition to his trust monies, Wells was receiving monthly payments of $833 from his father, and payments of $5,000 from his grandmother on his birthday, Easter and Christmas. Wells had not disclosed this additional income.

The trial court also found Wells did not tell Wilson that in February 1988, he accepted a job with a starting annual salary of $32,000. At the time of trial, Wells was operating his own independent manufacturer's business and earning a monthly net income of $2,777, although the exact date he began this job is not stated in the trial record.

The trial court applied the child support guidelines and concluded the substantial change in Wells' circumstances mandated increasing his child support obligation from $300 per month to $1,000 per month retroactive to September 1990. The trial court also ordered Wells to pay $2,457.42 in support arrearages.

Wells did not pay the child's medical and dental insurance premiums or medical and dental expenses not covered by insurance as directed by the March 1988 order. Thus the trial court ordered Wells to pay $3,205 arrearages. The trial court recognized that Wells voluntarily paid $8,422 to Wilson through Hennepin County Support and Collections, yet it did not credit Wells with these payments.

The trial court found Wells had the financial resources to pay Wilson's attorney fees and Wells had contributed more to the length and expense of the proceedings than had Wilson. Therefore, the trial court ordered Wells to pay $20,000 of Wilson's attorney fees. This appeal followed.

## ISSUES

1. Did the trial court err by including regularly received monetary gifts as income in determining appellant's child support obligation?

2. Did the trial court err by requiring appellant to pay for past medical and dental expenses and insurance premiums?

3. Did the trial court err by awarding respondent $20,000 in attorney fees?

### ANALYSIS

#### I.

■ Parents have a "legal and natural duty" to take care of their children until they are old enough to take care of themselves. *Mund v. Mund*, 252 Minn. 442, 445, 90 N.W.2d 309, 312 (1958). This duty of support "commences with the child's birth." *Jacobs v. Jacobs*, 309 N.W.2d 303, 305 (Minn.1981).

The trial court has broad discretion to modify child support. *Bledsoe v. Bledsoe*, 344 N.W.2d 892, 895 (Minn.App.1984). We will reverse the trial court only if it has abused its discretion, that is, if the order is arbitrary or unreasonable or without evidentiary support. *Id.*

■ Child support may be modified upon a showing of substantially increased income which makes existing child support terms unreasonable and unfair. Minn.Stat. § 518.64, subd. 2 (1990). In considering child support modification, the trial court must consider all earnings, income and resources of the parents; the financial needs and resources, physical and emotional condition and educational needs of the child; and the child's standard of living. Minn. Stat. § 518.551, subd. 5(b)(1) (1990).

The non-reported monthly payments of $833 Wells receives from his father and the $5,000 payments he receives from his grandmother make the existing child support terms unreasonable and unfair. The facts of this case show the payments were gifts. A valid gift requires: 1) donative intent; 2) delivery; and 3) absolute disposition of the property. *Oehler v. Falstrom*, 273 Minn. 453, 456–57, 142 N.W.2d 581, 585 (1966).

■ The trial court struggled over whether the monetary payments created a contractual obligation. However, a regular, systematic gift cannot be classified as an enforceable obligation; a person is not forced to give a gift. Thus an expected gift is not always a resource subject to child support. However, if a gift is regularly received from a dependable source, it may properly be used to determine the amount of a child support obligation.

■ Thus we remand this case to the trial court to determine 1) a reasonable way for Wells to report, in a systematic fashion, the amount of the gifts he has received and will receive; 2) the portion of the gifts to be used for child support; and 3) the method of payment. The system of reporting should be similar to that used for salary bonuses. *Lynch v. Lynch*, 411 N.W.2d 263, 266 (Minn.App.1987), *pet. for rev. denied* (Minn. Oct. 30, 1987); *see also Haasken v. Haasken*, 396 N.W.2d 253, 261 (Minn. App.1986). In making its determinations, the trial court must act according to the best interests of the child.

It is Wells' responsibility to report the amount of each gift and the date he has received or will receive it. This burden is not too oppressive. Wells agreed in the parties' 1987 stipulation to apprise Wilson of his employment status and income, which the trial court incorporated into its 1988 order.

#### II.

■ The record discloses no basis for the trial court's failure to credit Wells' voluntary overpayments to his obligations. On remand, the court shall credit $3,205 of Wells' $8,422 voluntary overpayment toward his insurance premiums and medical and dental expense arrearages, regardless of whether the overpayment was specifically dedicated to that purpose.

#### III.

■ We affirm the trial court's award of $20,000 attorney fees to Wilson despite the fact the attorney fees in this case seem to be extraordinarily high. However, the trial court did not abuse its broad discretion. *See Solon v. Solon*, 255 N.W.2d 395, 397 (Minn.1977). We reiterate our concern for

the escalating cost of attorney fees in family law matters.

> It does not ennoble a great profession to perpetuate a fee system that places upon the backs of ordinary wage earners and people of modest means the burden of oppressive debt. Family law is intended to be within the reach of all who need its protection, but when a fee system places such a heavy debt of thousands upon thousands of dollars, requiring an ordinary wage earner to carry that debt of attorney fees for several years, the system is wrong and must be corrected.

*Meyer v. Meyer,* 441 N.W.2d 544, 548 (Minn.App.1989), *pet. for rev. denied* (Minn. Aug. 15, 1989). The Profession has an affirmative duty to provide quality legal services within the ability of the litigant to pay.

### DECISION

We affirm the trial court's award of attorney fees of $20,000 to Wilson. We affirm the trial court's decision that Wells failed to pay $3,205 for insurance premiums and medical expenses, but remand for the court to offset this amount against Wells' $8,422 overpayment.

We reverse the child support award and remand for the trial court to determine a reasonable way for Wells to report the amount of the gifts he has received and will receive, the portion to be used for child support, and the method of paying the child support.

Affirmed in part, reversed in part and remanded.