645 N.W.2d 747 (2002)
In re RAMSEY COUNTY, o/b/o PIERCE COUNTY, WISCONSIN, Respondent,
Gabrielle Joy Hruska, Respondent,
v.
Ryan M. Carey, Appellant.
No. C7-01-2052.
Court of Appeals of Minnesota.
June 25, 2002.
*748 Susan E. Gaertner, Ramsey County Attorney, Dawn R. Burlingame, Assistant County Attorney, St. Paul, MN, for respondent Ramsey County.
Gabrielle Joy Hruska, Prescott, WI, pro se respondent.
Daniel S. McGrath, Steingart, McGrath & Moore, LLC, Minneapolis, MN, for appellant.
Considered and decided by RANDALL, Presiding Judge, STONEBURNER, Judge, and HUSPENI, Judge.

OPINION
HUSPENI, Judge.[*]
On appeal from the denial of his motion to reduce his support obligation, appellant-father, who is totally disabled and lives with his parents, alleges (a) payments by his parents for his expenses should not be imputed to him as income; (b) his current net monthly income is below the poverty line, making child-care cost reimbursement presumptively unreasonable; and (c) equity requires that his support obligation be adjusted to be commensurate with his disability benefits. Because we agree that the magistrate erred in including as income to appellant the value of expenses met by his parents, and because without inclusion of that value in appellant's income, his child support obligation would be less than his minor child receives as derivative disability benefits, and because payment of child-care costs would be unreasonable, we reverse.

FACTS
In 1999, respondent Ramsey County, on behalf of respondent Gabrielle J. Hruska, *749 filed a paternity action against appellant Ryan M. Carey. After a hearing, the district court adjudicated Carey the father of respondent's child and, pursuant to the parties' agreement, entered an order establishing a $300 monthly child support obligation beginning January 1, 2000.
Carey was subsequently adjudicated totally disabled by the Social Security Administration and began receiving disability benefits. At present his sole income is $633 per month in disability benefits. While Carey's application to be adjudicated as disabled was pending, his parents heeded advice of various mental health advocates and created a supplemental needs trust (the trust) for him.
In August 2000, Carey moved to modify his child support obligation. Prior to the hearing, Carey indicated on the court's information request form that his expenses were being paid by the trust. Janet Carey, Carey's mother, who has power of attorney for Carey, represented that Carey's monthly expenses were at least $3,000.
After a hearing, the magistrate, in an October 24, 2000 order, found that Carey had an imputed monthly income of $3,000 from the trust and $611 in disability benefits. Although the monthly guideline-determined support obligation for an income of $3,611 was $902.75, the magistrate did not modify the support obligation because no motion to increase support was pending. The magistrate granted Carey an adjustment, reducing his required payments by $107.50, to reflect the amount of dependent benefits paid to the minor child from social security. The district court affirmed the magistrate's order and Carey did not appeal.
In April 2001, Carey again moved to modify his child support obligation. At the hearing on that motion, Janet Carey testified that Carey's monthly expenses had decreased significantly since October 2000, because Carey was no longer able to live independently and had moved into his parents' home. The record reflects that the only funds that have been deposited into the trust since January 1, 2001, are Carey's disability benefits. Janet Carey testified that Carey's expenses averaged $667 per month and that his disability payments were $633. She also testified that the monthly expenses for running her household, in which she, her husband, and Carey resided, were at least $2,700.
The magistrate imputed $900 per month of in-kind income to Carey during 2001, which was one-third of the Carey household's monthly expenses. Subtracting out-of-pocket medical expenses of $411.79 from the imputed income and disability payments, the magistrate determined that Carey's average net monthly income was at least $1,121.21, that guideline support would be at least $280.30, and that Carey had failed to establish a substantial change in circumstances rendering the current support order unreasonable and unfair.[1] The magistrate also ordered that, effective May 1, 2001, Carey's obligation to provide support for the cost of medical and dental insurance be suspended in each month in which he verified that he received insurance from Minnesota Care or medical assistance. Further, the magistrate denied *750 Carey's request that his contribution toward child-care costs be modified.
This appeal followed.

ISSUES
1. Does the value of living expenses provided by parents to a totally disabled adult father constitute income that may be used in calculating the father's child support obligation?
2. Did the father show a substantial change in circumstances rendering the current child support obligation unreasonable and unfair and warranting a modification of his child support obligation?
3. Was the father's income below the federal poverty line and would such circumstance render the payment of child-care costs presumptively unreasonable?

ANALYSIS
The parties do not dispute that we are to review this child support magistrate's decision in the same manner as we would if a district court had made the decision. Brazinsky v. Brazinsky, 610 N.W.2d 707, 710 (Minn.App.2000).[2] District courts have broad discretion when deciding whether to modify child support. Putz v. Putz, No. C7-01-257, 645 N.W.2d 343, 351, 2002 WL 1291822, at *4 (Minn. 2002). We will reverse an order regarding the modification of child support "only if the district court abused its broad discretion" and reached a "clearly erroneous conclusion that is against the logic and the facts on [the] record." Id.
Carey argues that the magistrate clearly erred by determining that his income changes did not constitute a significant change in circumstances. He argues that (1) his parents' contribution to his living expenses should not be imputed to him as income for the calculation of his child support obligation; (2) he has shown a substantial change in circumstances because his expenses, and imputed income, have decreased dramatically; and (3) his income is below the federal poverty line and, therefore, making him pay child-care costs is presumptively unreasonable. We find Carey's arguments to be persuasive.

I.
In setting or modifying child support, the court shall take into consideration "all earnings, income, and resources of the parents * * *." Minn.Stat. § 518.551, subd. 5(c)(1) (Supp.2001). Income is defined as
any form of periodic payment to an individual including, but not limited to, wages, salaries, payments to an independent contractor, workers' compensation, unemployment benefits, annuity, military and naval retirement, pension and disability payments.
Minn.Stat. § 518.54, subd. 6 (2000). On this record, the payments made by Carey's parents for Carey's expenses are not made *751 to Carey. Therefore, those payments cannot be his "income" under the statutory definition of that term. Neither can we conclude that what is provided for Carey by his parents constitutes either his "earnings" or his "resources." There is no evidence in the record that Carey has, in any way, "earned" any sums from his parents. Similarly, because there is no indication that Carey has any control over, or input regarding, the use of any of the funds expended by his parents for his expenses, we cannot say that what his parents provide for him can be deemed his "resource." Thus, he has no income other than his $633 per month in social security disability benefits, he has no earnings, and he has no resources upon which a child support obligation may be imposed.
In addition to the earnings, income, or resources listed in Minn.Stat. § 518.551, subd. 5(c), several statutory mechanisms exist to address any atypical ability a child support obligor may have to satisfy or help satisfy a support obligation. First, Minn. Stat. § 518.551, subd. 5(b)(1) (Supp.2001), provides that when determining child support obligations, the obligor's income includes "in-kind payments received by the obligor in the course of employment, self-employment, or operation of a business if the payments reduce the obligor's living expenses."[3] In Franzen v. Borders, however, we held that expenses paid for room and board that an obligor received while imprisoned did not constitute in-kind income under this section because the expenses were not incurred "in the course of employment." Franzen v. Borders, 521 N.W.2d 626, 630 (Minn.App.1994) (quoting Minn.Stat. § 518.551, subd. 5(b)(1) (Supp. 1993)). Similarly, the expenses met by Carey's parents here were clearly not expenses incurred "in the course of" Carey's employment and, therefore, this subdivision cannot be used to impute income to him.
Second, courts are authorized to impute income to parents who are voluntarily unemployed or underemployed. Minn.Stat. § 518.551, subd. 5b(d) (2000). However, if a person is "mentally incapacitated, it shall be presumed that the parent is not voluntarily unemployed or underemployed." Minn.Stat. § 518.551, subd. 5b(e) (2000). Carey's adjudication as totally disabled statutorily requires the presumption that he is not voluntarily unemployed or underemployed pursuant to Minn.Stat. § 518.551, subd. 5b(d).
Third, caselaw makes clear that
[Minn.Stat. § ]518.551, subd. 5b(d) does not limit the power of the courts to consider whether an obligor's unemployment or underemployment is in bad faith toward his or her support obligation.
Putz, 645 N.W.2d at 351, 2002 WL 1291822, at *7. Here, however, there is no allegation that Carey is unemployed or underemployed in bad faith.
Respondents cite to Barnier v. Wells, 476 N.W.2d 795 (Minn.App.1991), in support of their argument that the value of the room, board, and expenses that Carey's parents provide for him should be included in his income as a "periodic payment." There is no merit in this argument. In Barnier, we held that gifts *752 "regularly received from a dependable source," may properly be included in the obligor's income for support purposes. Id. at 797. In Barnier, the obligor received monthly payments of $833 from his father, and payments of $5,000 from his grandmother each year on his birthday, Easter, and Christmas. Id. at 796. We held that the district court could take those regular, recurring monetary gifts received by the obligor into account when assessing his income for purposes of setting his child support obligation. Id. at 797.
There is a significant distinction between the circumstances of Carey and those of the obligor in Barnier, who was fully employed and received significant cash gifts from his relatives. Importantly, what has been imputed to Carey as "income" are in-kind benefits provided to him by his parents. Unlike the situation in Barnier, the record before us in this case contains no reference to any payments, "periodic" or otherwise, being made to Carey himself by his parents. Moreover, as noted above, Carey has no control over the expenditure of funds on his behalf.
Any "income" imputed to Carey by the magistrate has as its sole source the care and kindness of parents providing to an adult, disabled child those necessities that the child is unable to provide for himself. To label as "income" that which Carey's parents are providing to him is tantamount to placing upon those parents the obligation to support their grandchild. While Carey's parents may wish to be generous in their voluntary care and concern for their grandchild, they cannot be legally required to provide monetary support for the grandchild through the guise of imputing as "income" to Carey the value of the services and necessities provided to him by his parents.

II.
Because the magistrate erroneously imputed $900 per month income to Carey, a substantial change in circumstances is now presumed because his guideline-determined child support obligation is more than 20% and more than $50 less than his current obligation. See Minn. Stat. § 518.64, subd. 2(b)(1) (articulating presumptions for support modification proceedings.) Accordingly, his child support obligation may be modified. Minn.Stat. § 518.64, subd. 2(a) (2000) (child support obligation may be modified upon a showing of one or more changes in circumstances, including "substantially increased or decreased earnings of a party," that renders the prior order unfair and unreasonable).
Without the $900 in imputed income, Carey's monthly income is $633, and his guideline-determined child support obligation is $107.61. Because the minor child receives social security derivative benefits in excess of that amount, those payments satisfy Carey's support obligation. Carey owes no current support, except for the derivative benefits provided by social security. See Holmberg v. Holmberg, 578 N.W.2d 817, 827 (Minn.App.1998) (holding that obligor's child support obligation is offset by social security disability benefits paid on behalf of obligor's child), aff'd on other grounds, 588 N.W.2d 720 (Minn. 1999).

III.
Carey also argues that his income is below the federal poverty line and that he, therefore, should not be required to contribute toward child-care costs. We agree.
We have previously noted that social security disability benefits are designed to protect the recipient from poverty, and the recipient receives the minimum amount necessary to do so. Becker County Human *753 Servs. v. Peppel, 493 N.W.2d 573, 575 (Minn.App.1992). Despite this laudable goal, the amount of benefits Carey receives, $633 per month, still places him below the poverty level, which for the year 2001 for a family of one is approximately $715 per month. 66 Fed.Reg. 10695-10697 (Feb. 16, 2001).
Finally, Minnesota statutory requirements recognize the need to consider whether an obligor falls below the federal poverty level. Minn.Stat. § 518.551, subd. 5(b) provides:
The court shall review the work-related and education-related child care costs paid and shall allocate the costs to each parent in proportion to each parent's net income, as determined under this subdivision, after the transfer of child support and spousal maintenance, unless the allocation would be substantially unfair to either parent. There is a presumption of substantial unfairness if after the sum total of child support, spousal maintenance, and child care costs is subtracted from the obligor's income, the income is at or below 100 percent of the federal poverty guidelines.
Carey's income, without subtractions of any kind, falls below the federal poverty guidelines. The magistrate's denial of Carey's request to modify his child-care cost obligation was based in large measure on the imputation of $900 per month income to him. We have found that imputation to be erroneous and conclude that substantial unfairness would result if Carey were assessed child-care costs in his present circumstances.

DECISION
The value of the room, board, and miscellaneous expenses provided to Carey by his parents does not constitute income for purposes of determining his child support obligation, nor are these items earnings or resources. Excluding this value, the decrease in Carey's income results in a guidelines support obligation that is more than $50 and 20% less than the current order. Therefore, Carey has demonstrated a presumptive substantial change in circumstances making the current order unreasonable and unfair. Excluding the value of the room, board, and expenses provided by Carey's parents, Carey's monthly income is $633, and his guideline-determined child support obligation is $107.61. His child receives social security derivative benefits in excess of that amount. Therefore, we decline to assess a child support obligation beyond the social security derivative benefits now being received by the minor child. Finally, because Carey's income is below the federal poverty line, it would be substantially unfair to assess child-care costs against him.
Reversed.
NOTES
[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.
[1] Effective September 1, 2001, Carey's $300 per month support obligation was offset by the current derivative disability benefits from the Social Security's Retirement, Survivors, and Disability Insurance program (RSDI benefit) in the amount of $112 paid to the minor child each month, resulting in a net monthly obligation of $188. Appellant is also the father of another child with a different mother. He has not been assessed child support for that child, who also receives $112 in dependent benefits from the Social Security Administration.
[2] Carey appealed directly from the magistrate's order without seeking review of that order under Minn. R. Gen. Pract. 376.01. The parties do not argue and we do not address the impact of this procedure on our scope of review. See Minn. R. Gen. Pract. 378.01 advisory comm. cmt. (addressing scope of review of rulings made in expedited child support process). Moreover, upon reviewing this record and the arguments made by these parties, we conclude that the ultimate result in this appeal would not change if we were to more fully address the scope of review in this case. Cf. Putz v. Putz, No. C7-01-257, 645 N.W.2d 343, 346-47, 2002 WL 1291822, at *3 n. 5, *4 (2002) (not addressing scope of review but applying the standard of review generally applicable to child support matter where the appeal was taken directly from magistrate's order and parties agreed that the generally applicable standard of review was the proper standard).
[3] Ramsey County argues that the magistrate's reference to "in-kind income" to characterize the value of the necessities provided to Carey by his parents is a word choice and not necessarily an application of Minn.Stat. § 518.551, subd. 5(b)(1), which is the mechanism for imputing "in kind" income. Respondent argues that if we find that Minn.Stat. § 518.551, subd. 5(b)(1), does not apply, the proper inquiry should be whether the value of those gifts should be included in income, regardless of the terminology used. We agree and accordingly examine all mechanisms for imputing income.