Lorie J. LONG, f/k/a Lorie J. Creighton, Petitioner, Appellant,

v.

**Michael J. CREIGHTON, Respondent.**

No. A03–265.

Court of Appeals of Minnesota.

Nov. 4, 2003.

Neal H. Nelson, Roseville, MN, for appellant.

Michael J. Creighton, Brooklyn Center, MN, pro se respondent.

Considered and decided by STONEBURNER, Presiding Judge, TOUSSAINT, Chief Judge, and SHUMAKER, Judge.

## OPINION

STONEBURNER, Judge.

Appellant-mother Lorie J. Long challenges the district court's suspension of respondent-father Michael J. Creighton's child-support obligation for the parties' three children in Long's custody, which the district court made retroactive to the date Creighton began receiving public assistance. Long also challenges the district court's order requiring her to pay guideline support for one child transferred by agreement of the parties to Creighton's temporary custody. The record supports the district court's findings regarding Creighton's income and expenses, and therefore, we affirm the district court's determination that Creighton was entitled to a suspension of his child-support obligation. Because the district court specifically found that Creighton received need-based public assistance during the period for which he sought retroactive modification of child support, we affirm the district court's order making the modification retroactive to the date Creighton began receiving support. But the district court abused its discretion by requiring Long to pay guideline support for the child temporarily transferred to Creighton's custody because that determination is based, in part, on a finding that Long's current spouse has an obligation to support the children in Long's custody. And the district court failed to consider that Long provides sole support for the two children

in her custody. Because Long's current spouse does not have an obligation to support Long's children from her marriage to Creighton, and Long is entitled to a downward deviation from her guideline support obligation for one child in recognition of her sole support of the two children in her custody, we reverse and remand for a redetermination of Long's support obligation for the child in Creighton's custody.

### FACTS

Appellant Lorie J. Long had custody of the three children of her marriage to respondent Michael J. Creighton from their separation in 1996 until November 1, 2002, when she agreed that the oldest child could temporarily live with Creighton. Creighton has been engaged in an ongoing attempt since his child-support obligation was established in 1996 to reduce his obligation and have child-support arrearages forgiven.

By notice of motion and motion served on Long on November 8, 2002, Creighton sought a change of custody of the oldest child [1] and a modification of child support to reflect that change, as well as modification of his support obligation retroactive to April 2001, based on his receipt of need-based general assistance. The parties appeared pro se at the hearing on Creighton's motions that took place in January 2003. Creighton's child-support obligation was last determined in January 2000 when he was employed by Target with a net monthly income of $1,341. With COLA adjustments, his obligation was $487 per month at the time of the hearing.

A child-support officer testified that Creighton received general assistance ret-

roactive to April 2001. She also testified that his child-support arrearages through December 2002 totaled $9,123.26, and that if the district court suspended Creighton's child-support obligation retroactive to April 2001, Creighton would have overpaid child-support and could request that Long repay the support that she had received.[2]

Creighton testified that he had been receiving general assistance since April 2000. He denied having worked in the 90 days prior to the hearing. Creighton testified that he was "doctor ordered not to work. I just had major surgery ... September 30 through October 10." The district court directed Creighton to provide a notarized statement from his doctor verifying that Creighton is currently unemployable because of a medical condition.

Michael Jeddoloh, M.D., subsequently sent an unnotarized letter to the district court, stating that he first saw Creighton in April 2001 for multiple problems, but primarily for a back injury he may have suffered at work that was making it difficult for him to work. Dr. Jeddoloh reviewed other problems, including Creighton's Crohn's disease and a ventral hernia. Dr. Jeddoloh verified that Creighton had adjustable gastric band surgery and repair of the hernia on September 30, 2002, after which he suffered a flare of Crohn's disease, "and is having great difficulty managing this condition at this point." Despite Creighton having lost 25 pounds since surgery, Dr. Jeddoloh states that Creighton

> remains quite morbidly obese in the upper 300 range.... At this time, the patient is not able to work. He needs bathroom accessibility frequently. He

---

**1.** At the hearing on Creighton's motions, the parties agreed to a temporary change of the oldest child's custody to Creighton.

**2.** The district court did not consider or make any determinations regarding whether Long will be required to repay any child-support overpayments, and this matter is not before us on appeal.

does have chronic low back pain, which with his potential weight loss, hopefully will be improved in the future. He is currently following with a gastroenterologist and surgeons for these issues respectively.

At the hearing, Long provided Schedule C from her 2001 tax returns, showing a profit from her hair stylist business of $24,122. She testified that she does not have any additional income, she and the children are covered by her current spouse's medical insurance, and she does not make any contributions to a retirement plan. Long testified that her current spouse makes about $45,000 per year. When asked what percentage of household expenses she pays, Long stated "[I]t's all joint, it's all combined. Our monies are combined." The district court required Long to provide a complete copy of her 2001 tax return and a notarized list of family household expenses and the percent of those expenses that she pays. Long provided the tax return and a notarized statement of monthly expenses, but did not provide any information about the percent of the expenses that she pays.

Based on the testimony at the hearing and the parties' post-hearing submissions, the district court granted Creighton's request for temporary physical custody of the oldest child, suspended Creighton's child-support obligation retroactive to April 1, 2001, and ordered Long to pay child support to Creighton in the amount of $362 per month retroactive to November 1, 2002.

Long appeals the retroactive suspension of Creighton's child-support obligation and the determination of her child-support obligation that is based on apportioning 69% of household expenses to her current husband and that ignores the fact that she provides sole support for the two children in her custody.

## ISSUES

I. Did the district court abuse its discretion by suspending respondent-father's child-support obligation and making the suspension retroactive to the date when he began receiving general assistance benefits, approximately 19 months prior to the date that appellant-mother was served with respondent-father's motion for a child-support modification?

II. Where appellant-mother's household expenses are for appellant-mother, her two children from her marriage to respondent-father, and her current husband, did the district court abuse its discretion by apportioning 69% of those expenses to her current husband, based on a comparison of incomes, to conclude that appellant-mother has the ability to pay guideline child support of 25% of her net monthly income for support of the child in respondent-father's temporary custody?

III. Is appellant-mother entitled to a downward deviation from guideline child support for the child in respondent-father's temporary custody based on the fact that she provides sole support in her home for two of the children from her marriage to respondent-father?

## ANALYSIS

■■■ The district court has broad discretion in determining whether to modify a child-support obligation. *In re Ramsey County ex rel. Pierce County, Wis.*, 645 N.W.2d 747, 750 (Minn.App.2002). This court will reverse the district court's determination regarding a child-support modification "only if the district court abused its broad discretion" and resolved the matter in a manner "that is against the logic and the facts on [the] record." *Id.* (citation omitted).

■ When a party moves to modify a child-support obligation, the district court must first determine whether a change in circumstances warrants modification of the existing obligation. Minn.Stat. § 518.64, subd. 2(a) (2002). The district court may modify a child-support obligation if there has been a substantial increase or decrease in the earnings of a party. Minn.Stat. § 518.64, subd. 2 (2002). If child support has been modified several times, this court looks to the last modification order to determine whether there has been a change in circumstances. *In re Custody of A.S.R.*, 539 N.W.2d 607, 611 (Minn.App.1995).

One of the statutory bases for modification of child support is a showing of substantially decreased earnings of a party. Minn.Stat. § 518.64, subd. 2(a)(1). This court has also recognized that a change in physical custody is normally a change of circumstances that makes an original support order unreasonable and unfair. *Buntje v. Buntje*, 511 N.W.2d 479, 481 (Minn.App.1994).

Long does not dispute that the temporary change of the oldest child's custody to Creighton warrants a modification of Creighton's child-support obligation. Long asserts, however, that the district court abused its discretion by accepting without question Creighton's testimony that he relies on "loans" from his family to meet his needs and by failing to confirm whether these "loans" were in fact gifts. *See Barnier v. Wells*, 476 N.W.2d 795, 797 (Minn.App.1991) (stating that regularly received gifts may be considered as income for a child-support determination). Long notes that in response to one of Creighton's prior motions to modify child support, an administrative law judge found that Creighton's income was supplemented by "gifts" and "loans" from friends such that modification of child support was not

warranted even though Creighton was unemployed.

Long also asserts that the district court abused its discretion by accepting Dr. Jeddoloh's unnotarized letter and suspending Creighton's child-support obligation without any evidence of the duration of his alleged inability to work. Long argues that she should have been allowed to cross-examine Dr. Jeddoloh.

I.

**A. Suspension of child-support obligation based on inability to work**

■ The district court is not required to hold an evidentiary hearing on a motion to modify child support. Minn.Stat. § 518.64, subd. 2(f). In general, a motion to modify child support may be determined on affidavits without the need for cross-examination. *Mathias v. Mathias*, 365 N.W.2d 293, 296–97 (Minn.App.1985). This is because a child-support modification generally only requires one party to show a change in need or ability to pay. *Id.* at 297 (quoting *Saturnini v. Saturnini*, 260 Minn. 494, 498, 110 N.W.2d 480, 483 (1961)). The district court has discretion to determine whether an evidentiary hearing is required. *Id.*

■ Long does not challenge the district court's finding that Creighton's living expenses exceed his income from general assistance by approximately $360 per month. But she challenges the district court's acceptance of Creighton's testimony that his only income is from general assistance and food stamps and that he meets his need through loans from family. And she objects to the district court's acceptance of and reliance on Dr. Jeddoloh's unnotarized letter, after the court cautioned Creighton that a letter from his doctor must be notarized, for the proposi-

tion that Creighton is unable to work for medical reasons.

 Long, however, has not provided any evidence that Creighton was regularly receiving gifts during the time period for which he sought modification of his child support or that he was able to work during any of this time.[3] The child-support officer confirmed that Creighton has received general assistance as of April 2001. Given Creighton's history of unsuccessfully seeking to avoid or modify child support based on his medical condition, a more detailed inquiry by the district court into Creighton's current situation may have been warranted. But, based on the evidence in the record, we cannot say that the district court abused its discretion either by declining to schedule a further evidentiary hearing or by relying on Creighton's testimony and the doctor's letter when the court suspended Creighton's child-support obligation based on his lack of funds and inability to work.

### B. Retroactive modification to date general assistance began

 Forgiveness of unpaid, child-support arrears that have accrued before the party has brought a motion to modify child support is a retroactive modification governed by Minn.Stat. § 518.64, subd. 2(d). *Darcy v. Darcy*, 455 N.W.2d 518, 524 (Minn.App.1990). In general, a child-support order may be modified only back to the date of service of the notice of motion for modification. Minn.Stat. § 518.64, subd. 2(d). But, the district court may retroactively modify to an earlier date if the court expressly finds that "the party seeking modification was a recipient of . . . public assistance based upon need during the period for which retroactive modification is sought." *Id.*

In this case, the district court cited the statute in its order and expressly found that Creighton's "General Assistance cash grant, which is need-based, was effective April 2001." And on this basis, the district court determined that Creighton's child-support obligation should be suspended as of April 1, 2001.

Long argues that the district court failed to analyze the effect of the retroactive modification. But the child-support officer, at the beginning of the hearing, informed the district court of the possible consequences of the retroactive modification. And as desirable as a full analysis and detailed findings may be, there are no statutory or case law requirements that make their absence an abuse of discretion. Based on the law and the record, we cannot say that the district court abused its discretion by suspending Creighton's child-support obligation retroactive to the date when he began to receive need-based general assistance.

### II.

 Long challenges the district court's reduction of her claimed monthly expenses by 69% based on its finding that her current husband is responsible for that amount of Long's monthly living expenses as a violation of the statutory prohibition on considering the financial circumstances

---

**3.** We disagree with Long's assertion that, but for Dr. Jeddoloh's letter, relitigation of whether Creighton's medical condition prevented him from working is barred by principles of res judicata and collateral estoppel. Res judicata bars a second suit for the same claim by the same party. *Kaiser v. Northern States Power Co.*, 353 N.W.2d 899, 903 (Minn.1984).

And collateral estoppel only applies when the issue at hand is identical to an issue previously litigated. *Deli v. Hasselmo*, 542 N.W.2d 649, 656 (Minn.App.1996). Clearly Creighton has never previously litigated the issue of whether he was medically unable to work during the periods at issue in this case.

of her current spouse. Minn.Stat. § 518.64 subd. 2(c)(1). We agree.

■ Minn.Stat. § 518.551, subd. 5(b)(1) (2002), explicitly excludes from the definition of net income "the income of the obligor's spouse." Although the district court did not base its determination of Long's net income on a direct consideration of her spouse's income, when the court found that Long's spouse is responsible for 69% of the family's total expenses because he earns 69% of the family's total income, the court indirectly made Long's spouse responsible for the support of Long's children. No case law or statute imposes a legal duty upon a new spouse to provide support for his or her step-children. *Wende v. Wende,* 386 N.W.2d 271, 276 (Minn.App.1986). In considering Long's ability to pay child support on remand, the district court may not attribute expenses necessary for the support of Long and her children, at the standard of living enjoyed by Long and Creighton during their marriage, to Long's current spouse.

### III.

■ Long also argues that the district court abused its discretion by setting her child-support obligation for the child in Creighton's temporary physical custody without recognizing that she provides the sole financial support for the parties' two children who are in her custody. Because this case involves both split physical custody and a suspension of Creighton's support obligation, we agree that the district court abused its discretion in setting Long's child-support obligation.

■ Split physical custody exists when each parent has sole physical custody of some, but not all, of the parents' children. *Sefkow v. Sefkow,* 427 N.W.2d 203, 215 (Minn.1988). Where split physical custody exists, a support obligation is de-

termined for each parent and those obligations are then offset against each other. *Id.* at 217. Here, the district court set Long's child-support obligation at 25% of her net monthly income, the guideline amount for her net monthly income. Minn.Stat. § 518.551, subd. 5(b). In doing so, however, the district court gave no indication that it considered that, because Creighton's child-support obligation has been suspended, Long also provides the sole financial support for the two children residing with her.

When setting a support obligation, as well as when determining whether to deviate from the presumptively applicable guideline support obligation, the district court shall take into consideration certain statutory factors, including all earnings, income, and resources of the parents and the financial needs of the children. Minn. Stat. §§ 518.551, subd. 5(c)(1)(2), (i), 518.64, subd. 2(c)(1). A support obligor with Long's net monthly income has a guideline support obligation for three children of 35% of her net monthly income, and a guideline support obligation for one child of 25% of net monthly income. Here, Long receives no support from Creighton and, on this record, an order that requires Long to pay 25% of her net monthly income for support of the child in Creighton's temporary physical custody unduly favors that child over the two children in Long's physical custody, possibly jeopardizing the best interests of the children in her custody. Therefore, on this record, we cannot uphold a rigid adherence to the guidelines. *See Linderman v. Linderman,* 364 N.W.2d 872, 875 (Minn.App.1985) (noting cases involving split physical custody can render mechanical application of the child-support guidelines improper).

In *Malecha v. Malecha,* we affirmed a district court's departure from the guidelines to require a parent to pay 30% of his

net monthly income for three children in the other parent's custody, rather than 39% as required by the guidelines. 386 N.W.2d 292, 294 (Minn.App.1986). The district court in *Malecha* arrived at 30% by noting that the parent's support for all four children under the guidelines would be 39% of his net monthly income and by attributing 9% of his net monthly income to the support of the child in his custody. *Id.* at 293. We are not suggesting that the formula used in *Malecha* must be followed, and leave to the district court's discretion the determination of an appropriate calculation for a downward deviation of Long's guideline child-support obligation that takes into account all of the factors in Minn.Stat. § 518.551, subd. 5(c), for all of the children for whom she provides sole support.

## DECISION

The district court did not abuse its discretion by suspending Creighton's child-support obligation retroactive to the date he began receiving public assistance, which the district court expressly found to be need-based, where the record supports the district court's determination that Creighton is unable to work at this time due to his medical condition. The district court abused its discretion by requiring Long's current spouse to be responsible for a percentage of the total household expenses equal to the percent of his contribution to the total family income. The district court also abused its discretion by mechanically applying the child-support guidelines to determine Long's support obligation for the child in Creighton's custody without considering her ability to meet the needs of the two children in her custody for whom she provides sole support. We reverse the determination of Long's child-support obligation and remand for recalculation of Long's child-support obligation consistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**