*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0440**

Michael Charles Sasse, f/k/a
Michael Charles Sasse Penkert, petitioner,
Appellant,

vs.

Kathryn Elizabeth Penkert,
f/k/a Delight Bernice Penkert,
Respondent.

**Filed February 9, 2015
Affirmed in part, reversed in part, and remanded
Halbrooks, Judge**

Hennepin County District Court
File No. 27-FA-11-658

Deborah M. Gallenberg, Honsa & Associates, P.A., Minneapolis, Minnesota (for appellant)

Nicholas M. Wenner, Jordan W. Anderson, Parker & Wenner, P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Halbrooks, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

On appeal from the district court's modifications of parenting time and child support, appellant argues that the district court abused its discretion. We affirm the

district court's child-support modification, but we reverse and remand the district court's parenting-time modification because it is not supported by adequate findings.

## FACTS

The marriage of appellant Michael Charles Sasse and respondent Kathryn Elizabeth Penkert was dissolved pursuant to stipulated findings of fact, conclusions of law, order for judgment and judgment and decree entered in 2011. The parties have two minor children in common. The original judgment granted the parties joint legal custody and awarded shared parenting responsibilities. At the time the district court entered the original judgment, appellant was a full-time student at the University of Minnesota's College of Veterinary Medicine, and respondent was unemployed. Without explicitly addressing physical custody, the district court granted appellant 10-25% parenting time but stated, "Upon [appellant's] completion of his Veterinary Medicine Degree the parties agree to review the issue of Joint Physical Custody and Parenting Time Schedule." The original judgment provided that appellant would pay respondent $100 per month in basic child support and that child support could be reviewed and modified based upon a motion by either party.

On June 14, 2012, the parties filed a stipulation and order to amend the original judgment, which the district court signed, but an amended judgment was never entered. The stipulation provided that the parties would review parenting time when appellant graduated from veterinary school "with the parties' anticipation of establishing a 50/50 parenting schedule." Appellant graduated from veterinary school on May 11, 2013.

2

On August 21, 2013, appellant moved the district court to order various child-custody, parenting-time, and child-support modifications, including that (1) the parties have joint physical custody or set an evidentiary hearing, (2) the parenting-time schedule be modified according to appellant's proposed schedule, (3) appellant's basic child-support obligation be modified to $983 per month, (4) the parties' parental income for determining child support (PICS) shares be set at 64% for appellant and 36% for respondent, and (5) each party contribute to the costs of the children's health and dental insurance premiums and childcare expenses based on their respective PICS.

Respondent filed a responsive motion, asking the district court to deny appellant's motion in its entirety and to order that (1) the parenting-time schedule be modified according to respondent's proposed schedule, (2) appellant's basic child-support obligation be modified to $1,047 and respondent's medical-support obligation be $38 per month, (3) the parties divide the children's uninsured and unreimbursed medical expenses so that appellant pays 75% and respondent pays 25%, and (4) each party be responsible for childcare expenses incurred during their parenting time.

On September 19, 2013, the district court ruled on the parties' motions in a post-decree order. Relevant to this appeal, the district court (1) denied appellant's motion for joint physical custody; (2) found that it is "in the children's best interest to have consistent, predictable contact with both parents provided that said parenting time does not interfere with the children's ability to attend school" and adopted respondent's proposed parenting-time schedule; (3) ordered that appellant's child-support obligation be $1,027 per month and respondent's share of the health and dental coverage be $44 per

3

month, leaving appellant with a net child-support obligation of $983, retroactive to July 1, 2013; (4) found that appellant's PICS percentage was 71% and respondent's was 29%; and (5) denied appellant's motion for a downward deviation from the statutory child-support guidelines.

Appellant filed a "notice of motion and motion for review" on October 24, 2013. Appellant moved the district court to amend various findings in its September 19 post-decree order regarding physical custody, parenting time, primary residence during the summer, retroactivity of child support, respondent's imputed gross income, the parties' PICS percentages, and appellant's request for a downward deviation. Appellant's motion did not identify the rule of civil procedure that served as the basis for the motion, but he submitted a memorandum of law "in support of [appellant]'s request that the Court amend various Findings of Fact . . . pursuant to Minnesota Rule of Civil Procedure 52." Respondent also filed a notice of motion and motion on October 24, 2013, moving the district court to amend its September 19 order explicitly pursuant to Minn. R. Civ. P. 52.02.

In two orders filed on January 22, 2014, the district court assumed that appellant's "motion for review" was a motion seeking "permission to bring a Motion to Reconsider." The district court denied the motion because appellant failed to follow the proper procedure to bring a motion to reconsider and because he "failed to prove that the Court's Findings of Fact and Conclusions of Law were clearly erroneous." The district court granted respondent's motion to amend the September 19 order. In an amended post-decree order, the district court modified the parties' parenting-time schedule and child-

4

support obligations. Notice of entry was served on appellant on January 28, 2014. This appeal follows.

## D E C I S I O N

### I.

As a threshold matter, respondent asserts that this appeal is untimely. Therefore, we must determine whether appellant filed the appeal within the 60-day time period required under Minn. R. Civ. App. P. 104.01, subd. 1, which is a jurisdictional question. We review interpretation of court rules de novo. *Huntsman v. Huntsman*, 633 N.W.2d 852, 854 (Minn. 2001).

We "liberally construe[] the contents of notices of appeal in favor of their sufficiency." *Id.* Rule 104.01 provides that "an appeal may be taken from a judgment within 60 days after its entry, and from an appealable order within 60 days after service by any party of written notice of its filing." Minn. R. Civ. App. P. 104.01, subd. 1. The rule also states:

> [I]f any party serves and files a proper and timely motion of a type specified immediately below, the time for appeal of the order or judgment that is the subject of such motion runs for all parties from the service by any party of notice of filing of the order disposing of the last such motion outstanding. This provision applies to a proper and timely motion:
> . . . .
> (b) to amend or make findings of fact under Minn. R. Civ. P. 52.02, whether or not granting the motion would alter the judgment; [or]
> (c) to alter or amend the judgment under Minn. R. Civ. P. 52.02 . . . .

*Id.*, subd. 2.

5

Respondent argues that appellant failed to file a motion allowed under rule 104.01 because appellant's October 24 "motion for review" was actually a motion for reconsideration, and a motion for reconsideration is not included within the rule as one that tolls the time to appeal. Therefore, respondent argues that the 60-day time period in which appellant could appeal began in September 2013. As a result, respondent contends that appellant's March 19, 2014 appeal to this court is untimely. But it is undisputed that respondent filed a proper and timely motion under rule 52.02 on October 24, 2013. The district court resolved that motion in its amended post-decree order filed on January 22, 2014, and respondent served appellant with notice of filing of that order on January 28, 2014. Because the rule states that any party's timely and proper motion tolls the time for any party to appeal, appellant's 60-day time period to appeal was tolled until January 28, 2014. Appellant filed his notice of appeal on March 18, 2014, within the 60-day time period provided in rule 104.01. We therefore conclude that appellant's appeal is timely.

**II.**

Before reaching the substantive issues in this appeal, we must determine whether appellant's October 24, 2013 motion was a motion to reconsider or a motion for amended findings. Appellant's motion was titled a "motion for review." The district court found that a motion for review was "not applicable in this procedural situation."[1] The district court assumed that appellant was asking for permission to bring a motion to reconsider. Appellant contends that his motion was a motion for amended findings pursuant to Minn.

---

[1] A motion for review is appropriate when a party seeks review of a child-support magistrate's decision and order or judgment. Minn. R. Gen. Pract. 376.

6

R. Civ. P. 52.02. But respondent argues that appellant did not make a proper rule 52.02 motion because he did not "(1) address the record evidence, (2) explain why the record does not support the district court's findings, and (3) explain why the proposed findings are appropriate," as required by *Lewis v. Lewis*, 572 N.W.2d 313, 316 (Minn. App. 1997), *review denied* (Minn. Feb. 19, 1998).[2]

The issue here is whether the district court erred in finding that appellant's motion was not a motion for amended findings under the procedural rules. We review the interpretation of procedural rules de novo. *Huntsman*, 633 N.W.2d at 854. The rule states, "Upon motion of a party . . . the court may amend its findings or make additional findings, and may amend the judgment accordingly if judgment has been entered." Minn. R. Civ. P. 52.02. The party making the motion for amended findings must specify the defect in the findings and explain why the findings are defective, why the evidence in the record does not support the district court's findings, and why the moving party's proposed findings are correct. *Lewis*, 572 N.W.2d at 315-16.

Appellant's motion does not cite rule 52.02 as its basis, but it states that it seeks to "amend" numerous findings of fact in the September 19 post-decree order. And appellant's accompanying memorandum of law cites rule 52.02 as the basis for the motion. Appellant argues that his motion and memorandum satisfy the *Lewis* standard because they identify the alleged defects in the district court's findings of fact and

---

[2] *Madson v. Minn. Mining & Mfg. Co.*, 612 N.W.2d 168 (Minn. 2000), overruled *Lewis* in part, but *Lewis* remains good law as far as determining "whether a motion for amended findings has the necessary components and, if it does, . . . whether to grant the motion." *State by Fort Snelling State Park Ass'n v. Minneapolis Park & Recreation Bd.*, 673 N.W.2d 169, 178 n.1 (Minn. App. 2003), *review denied* (Minn. Mar. 16, 2004).

7

conclusions of law, state why the findings are defective, and explain the propriety of appellant's proposed findings and conclusions. Respondent argues that appellant merely restated his original arguments in his motion for review.

"[A] motion for 'amended findings' that does no more than reargue a prior motion is really a motion to 'reconsider.'" *Id.* at 315. While parties are required to do more than reargue a prior motion, the purpose of a motion for amended findings is to allow the district court to review its own discretionary findings. *Id.* Appellant's motion asks the district court to amend numerous findings of fact and conclusions of law, and appellant's memorandum argues that many of the district court's findings are erroneous in light of the discussions during the September 4 hearing. Reading appellant's memorandum of law in its entirety, the motion and memorandum sufficiently explain why appellant believes that the district court's findings are erroneous and why his proposed findings are correct. We conclude that appellant's motion was a proper motion for amended findings pursuant to rule 52.02.

Because we conclude that appellant properly moved for amended findings, the parenting-time and child-support issues were preserved and are properly before us.

### III.

Appellant argues that the district court abused its discretion when modifying parenting time because it (1) awarded appellant less than 25% parenting time without making the appropriate findings to rebut the 25% statutory presumption, (2) based its parenting-time decision on an erroneous interpretation of what constitutes a change in "primary residence," (3) failed to consider the best-interests factors in the aggregate, and

8

(4) failed to consider the parties' previous agreement that the parties would work toward a 50/50 parenting-time schedule. We review parenting-time decisions for an abuse of discretion. *Matson v. Matson*, 638 N.W.2d 462, 465 (Minn. App. 2002). Because we conclude that the district court abused its discretion, we remand the parenting-time decision based on (1) insufficient findings to rebut the 25% statutory presumption, (2) the district court's erroneous interpretation of "primary residence," and (3) insufficient findings regarding the children's best interests.

## A.    Statutory Presumption of 25% Parenting Time

Under Minnesota law, there is a rebuttable presumption that a parent is entitled to at least 25% of the parenting time for their children. Minn. Stat. § 518.175, subd. 1(g) (2014).[3] The statutory presumption can be rebutted by findings "related to the child's best interests and considerations of what is feasible given the circumstances of the parties." *Hagen v. Schirmers*, 783 N.W.2d 212, 218 (Minn. App. 2010). "An evidentiary presumption can be overcome when the district court finds that sufficient evidence justifies a finding contrary to the assumed fact." *Id.* (quotation omitted).

The parties dispute what percentage of parenting time appellant has under the amended schedule, but it is undisputed that the district court awarded less than 25% parenting time to appellant. The district court did not state that it was awarding less than the 25% statutory presumption, and it did not find that sufficient evidence rebutted the presumption. The district court minimally addressed the children's best interests and the

_____

[3] Minn. Stat. § 518.175, subd. 1, was amended in 2014, re-lettering the subparts and changing the relevant subpart from (e) to (g). 2014 Minn. Laws ch. 197, § 2. The substance of the relevant subpart remains the same.

9

"considerations of what is feasible given the circumstances of the parties." *See id.* The district court stated that "it is in the children's best interest to have consistent, predictable contact with both parents provided that said parenting time does not interfere with the children's ability to attend school." The district court also found:

> [I]t is not in the minor children's best interests to have to make a trip of at least an hour in the morning rush hour on their way to school Monday mornings. Therefore, the Court will order that school year parenting time be [from Friday at 7:00 PM to Sunday at 5:00 PM every other week], except that . . . it is in the minor children's best interest that [appellant] also have parenting time until 5:00 P.M. on the Mondays that the children do not have school if [appellant] has the day off of work.

But the district court indicated at the November 19 hearing that it did not intend to grant parenting time in an amount less than the statutory presumption. The record reflects that the district court stated that it "never intended in its post decree order to not be consistent with the presumption under the statute . . . . [T]he Court never intended not to have the presumption met." In addition, the district court stated:

> The Court will make amended findings to make sure that whatever parenting time schedule it amends, it changes to reflect the mistake that the Court made regarding the 25 percent, that it is clear what is the parenting time schedule. Holiday, summer and regular school. And it will meet the 25 percent.

The record lacks sufficient findings to conclude that the district court contemplated the fact that it was not satisfying the 25% presumption and that it intentionally granted parenting time in an amount less than the presumption.

**B.      Change in Primary Residence**

Appellant argues that the district court erred in construing his proposed summer schedule as a change in the children's primary residence and therefore abused its discretion by basing its parenting-time decision on an erroneous interpretation of what constitutes a change in primary residence.  Appellant's proposed schedule gave him three weeks of parenting time each month during the summer months of June, July, and August.  The district court found that appellant's "proposed schedule is a substantial modification from the school year schedule, such that [appellant]'s home would be the primary residence during the summer."  The district court relied on the original judgment, which designated respondent's home as the children's primary residence, and found that the circumstances did not support changing the primary residence of the children.  The district court denied appellant's proposed schedule and granted respondent's proposed schedule.

This court recently held that "primary residence" means "the principal dwelling or place where the child lives" and that a district court's modification of parenting time that significantly increases a party's parenting time over summer break does not change the child's primary residence.  *Suleski v. Rupe*, 855 N.W.2d 330, 335 (Minn. App. 2014). Here, the district court did not have the benefit of the *Suleski* decision because *Suleski* was published after the district court characterized appellant's proposed summer schedule as a change in primary residence for the children.  But in light of the ruling in *Suleski*, we conclude that the district court erred in finding that a significant proposed change in parenting time for the summer months would equate to a change in the children's primary

11

residence. To the extent that this erroneous determination underscored the district court's decision on appellant's proposed summer schedule, the district court will have an opportunity to reconsider it on remand.

Appellant also argues that the district court erred by granting respondent three weeks of summer vacation parenting time because the district court indicated during the November 19 hearing that it did not intend to include the three weeks in the order. The district court ordered that the summer parenting-time schedule include a provision that appellant's "parenting time could be extended one time each month in the months of June, July, and August from his regularly scheduled weekend to the following Friday at 5:00 p.m." and that respondent "shall have three non-consecutive weeks of vacation during the summer." Because it appears that the provision for three weeks of vacation parenting time merely allows respondent to exercise the notice provision in the order and to select her preferred vacation parenting-time weeks, we conclude that the inclusion of this provision is not error.

## C.    Best-Interests Factors

Appellant argues that the district court did not consider the best-interests factors in the aggregate when determining the parenting-time schedule. Minnesota law provides that the district court is to "grant such parenting time . . . as will enable the child and the parent to maintain a child to parent relationship that will be in the best interests of the child." Minn. Stat. § 518.175, subd. 1(a). Addressing the best interests of the children requires the district court to consider "all relevant factors," including the 13 factors listed in Minn. Stat. § 518.17, subd. 1(a) (2014).

"The district court is granted broad discretion to determine what is in the best interests of the child when it comes to visitation and we will not overturn its determination absent an abuse of discretion." *Braith v. Fischer*, 632 N.W.2d 716, 721 (Minn. App. 2001), *review denied* (Minn. Oct. 24, 2001). But the district court should set forth its basis for parenting-time determinations "with a high degree of particularity." *Wallin v. Wallin*, 290 Minn. 261, 267, 187 N.W.2d 627, 631 (1971) (noting that district courts have broad discretion in domestic cases generally, but that "in view of that broad discretion, it is especially important that the basis for the court's decision be set forth with a high degree of particularity if appellate review is to be meaningful").

The district court stated that a consistent and predictable schedule is in the best interests of the children. The district court also stated that its decision was, in part, based on ensuring that the children do not have to endure long commutes before school on Monday mornings and that the parenting time not interfere with the children's ability to attend school. The district court expressed that its goal was for the children to maintain contact with both parents and recognized that it is in the children's best interests to establish a holiday schedule that maximizes each parent's access to the children. While the district court considered the children's best interests, it did not make sufficient findings for meaningful appellate review.

**D.    Restriction on Parenting Time**

Appellant argues that the district court failed to consider the parties' previous agreement that they would work toward a 50/50 parenting-time schedule and that this constitutes a restriction of his parenting time under Minn. Stat. § 518.175, subd. 5(b)

(2014).[4] "A change in parenting time that reduces the amount of time a parent has with a child is not necessarily a restriction of parenting time. A restriction occurs when a change to parenting time is substantial." *Dahl v. Dahl*, 765 N.W.2d 118, 123 (Minn. App. 2009) (quotation and citation omitted). "To determine whether a reduction in parenting time constitutes a restriction or modification, the court should consider the reasons for the change as well as the amount of the reduction." *Id.* at 124.

The original judgment granted appellant 10-25% parenting time, including, at a minimum, one overnight each weekend and four two-hour visits during the week. On June 14, 2012, the parties stipulated to amend the original judgment. The stipulation changed appellant's parenting time to two overnights every other weekend and one mid-week, three-hour visit, but it did not significantly change appellant's parenting-time percentage. The stipulation also stated, "This schedule shall be reviewed upon completion of [appellant's] Veterinary Medicine Degree with the parties' anticipation of establishing a 50/50 parenting schedule."

Appellant asserts that the district court abused its discretion in restricting his parenting time because it did not make the requisite findings under Minn. Stat. § 518.175, subd. 5. The use of the phrase "[in] anticipation of establishing a 50/50 parenting schedule" indicates that the parties expected to establish a 50/50 schedule in the future, but that the schedule would be subject to review of the circumstances at the time appellant finished his degree. The original judgment granted appellant 10%-25%

---

[4] Minn. Stat. § 518.175, subd. 5, was amended in 2014, re-lettering the relevant subpart to (b). 2014 Minn. Laws ch. 197, § 3. The substance of the relevant subpart remains the same.

parenting time, and the stipulation did not change this percentage. The district court's parenting-time schedule in its post-decree orders continued to grant appellant between 10% and 25% parenting time. Because the 50/50 schedule was never actually put into place, we conclude that the district court's amended parenting-time schedule does not constitute a restriction of appellant's parenting time.

**IV.**

Appellant argues that the district court abused its discretion by modifying child support. The district court ordered that appellant's child-support obligation be $1,027 per month and respondent's share of the children's health and dental coverage be $44 per month, leaving appellant with a net child-support obligation of $983 per month. Appellant argues that the district court (1) failed to consider respondent's most recent earnings in calculating her imputed income, (2) failed to consider respondent's financial support from her significant other in determining respondent's income, and (3) failed to consider and grant appellant's request for a deviation from the child-support guidelines. The district court has broad discretion to modify child-support orders. *Putz v. Putz*, 645 N.W.2d 343, 347 (Minn. 2002). We will reverse a district court's child-support order only if "the district court abused its broad discretion by reaching a clearly erroneous conclusion that is against logic and the facts on record." *Id.*

**A.      Imputing Income to Respondent**

The district court found that respondent is voluntarily unemployed. After a finding that a parent is voluntarily unemployed, the district court must calculate the parent's child-support obligation based on a determination of potential income, using one

of three statutory methods. Minn. Stat. § 518A.32, subds. 1-2 (2014). One of the statutory methods considers "the parent's probable earnings level based on employment potential, recent work history, and occupational qualifications in light of prevailing job opportunities and earnings levels in the community." *Id.*, subd. 2.

Respondent has been unemployed since March 2010, when she was laid off from her job. Appellant argues that respondent's paystub from 2009 and the Department of Employment and Economic Development (DEED) wage summary indicate that she is capable of earning a gross annual income of at least $40,000 per year or $3,333 per month. Respondent's paystub indicates that in December 2009 her gross salary per pay period amounted to approximately $35,000 annualized. Respondent stated in her affidavit to the district court that the most she has ever earned in a year was $28,939 in 2009 and that she has never had an earning capacity of $40,000, as suggested by appellant. Respondent provided the district court with a list of potential jobs for which she qualified, and each job had annual wages of $20,000 to $28,000.

Based on a review of the record, we conclude that the district court considered respondent's most recent earnings when determining her potential income. The district court stated that "[b]ased on [respondent's] prior employment history, the Court finds that [respondent] could earn approximately $30,000 per year or $2,500 gross income per month." The record demonstrates that the district court properly based its potential-income determination on respondent's "probable earnings level based on employment potential, recent work history, and occupational qualifications in light of prevailing job opportunities and earnings levels in the community." Minn. Stat. § 518A.32, subd. 2.

16

We therefore conclude that the district court's imputation of respondent's potential income is not against logic or the facts in the record.

**B.      Respondent's Financial Support from Significant Other as Income**

Appellant argues that the district court erred by failing to consider the financial support that respondent receives from her significant other, G.B.  In her answers to interrogatories, respondent stated that she "also receives financial support from [G.B.], with whom Respondent is involved in a committed relationship, and who is the father of Respondent's non-joint child."  Respondent also stated, "[G.B.] contributes to most of my living expenses."  At the September 4 hearing, the district court stated that it would not consider G.B.'s contributions to respondent's expenses until it had the financial information regarding appellant's wife's contributions to his expenses.

Appellant argues that G.B.'s support should be considered "gifts" for the purpose of calculating respondent's gross income.  "A determination of the amount of an obligor's income for purposes of child support is a finding of fact and will not be altered on appeal unless clearly erroneous."  *Schallinger v. Schallinger*, 699 N.W.2d 15, 23 (Minn. App. 2005), *review denied* (Minn. Sept. 28, 2005).  But whether a source of funds is income for child-support purposes is a question of law, which we review de novo. *Sherburne Cnty. Soc. Servs. ex. rel. Schafer v. Riedle*, 481 N.W.2d 111, 112 (Minn. App. 1992).

"A valid gift requires: 1) donative intent; 2) delivery; and 3) absolute disposition of the property."  *Barnier v. Wells*, 476 N.W.2d 795, 797 (Minn. App. 1991).  In *Barnier*, this court concluded that regular gifts received by the appellant from his father and his

17

grandmother could be considered income, akin to salary bonuses. *Id.* "[I]f a gift is regularly received from a dependable source, it may properly be used to determine the amount of a child support obligation." *Id.* But "an expected gift is not always a resource subject to child support." *Id.*

Here, the record does not indicate the regularity of G.B.'s contributions to respondent or whether G.B.'s contributions meet the elements of a "gift." We conclude that G.B.'s contributions to respondent's living expenses are not income for child-support purposes and that the district court did not clearly err in determining respondent's income for purposes of calculating child support.

## C.    Deviation from Guidelines

Appellant argues that the district court abused its discretion by denying appellant's request for a deviation from the child-support guidelines.

> In the exercise of its discretion, the district court may depart from the guidelines in appropriate cases based on the unavailability of money included in gross income, or based on other facts or considerations that suggest that the guidelines do not accurately represent the amount of the child-support obligation for which a parent should be responsible.

*Haefele v. Haefele*, 837 N.W.2d 703, 714 (Minn. 2013) (citing Minn. Stat. §§ 518A.37, subd. 2, 518A.43, subd. 1). "Because the presumption is to follow the guidelines, the party who requests departure should provide evidence . . . that would justify departure." *Buntje v. Buntje*, 511 N.W.2d 479, 481 (Minn. App. 1994). The statute provides:

> [T]he court must take into consideration the following factors
> . . . in determining whether to deviate upward or downward
> from the presumptive child support obligation:
>
> (1) all earnings, income, circumstances, and resources
> of each parent . . . ;
>
> (2) the extraordinary financial needs and resources,
> physical and emotional condition, and educational needs of
> the child to be supported;
>
> (3) the standard of living the child would enjoy if the
> parents were currently living together, but recognizing that
> the parents now have separate households;
>
> (4) whether the child resides in a foreign country for
> more than one year that has a substantially higher or lower
> cost of living than this country;
>
> (5) which parent receives the income taxation
> dependency exemption and the financial benefit the parent
> receives from it;
>
> (6) the parents' debts . . . ; and
>
> (7) the obligor's total payments for court-ordered child
> support exceed the limitations set forth in section 571.922.

Minn. Stat. § 518A.43, subd. 1 (2014).

The district court stated at the September 4 hearing that it could not deviate "unless I have a complete picture of both parties' income." Appellant did not submit any additional financial information, and the district court found that the evidence was insufficient to justify a downward deviation from the child-support guidelines. "This court will not engage in speculation and [appellant] will not be heard to complain when he has failed to provide this court with a reviewable record." *Taflin v. Taflin*, 366 N.W.2d 315, 319 (Minn. App. 1985).

We note that the district court advised the parties to make any additional submissions relating to their family income and expenses by September 11, 2013, and neither party provided additional submissions. We conclude that the district court did not

abuse its discretion when it denied appellant's motion to deviate from the child-support guidelines.

**Affirmed in part, reversed in part, and remanded.**